**Susan ROE, Individually and on behalf of all others similarly situated, et al.**

**v.**

**Nicholas NORTON, Individually and as Commissioner of Welfare for the State of Connecticut, et al.**

**Civ. No. N–74–17.**

United States District Court,
D. Connecticut.

June 12, 1974.

Lucy Katz and Kathryn Emmett, Ann Hill and Catherine G. Roraback of New Haven, Conn. and Marilyn P. A. Seichter of Hartford, Conn., Bridgeport, Conn., for plaintiffs.

Edmund C. Walsh, Asst. Atty. Gen., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

NEWMAN, District Judge.

This suit raises issues of federal law concerning payment of welfare funds for the expenses of certain abortions. As a result of the decisions of the Supreme Court in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and of this Court in Abele v. Markle, 369 F. Supp. 807 (D.Conn.1973), the Connecticut welfare authorities have acknowledged that a pregnant woman, in consultation with her own physician, is entitled to decide to have an abortion. They further agree that those pregnant women who qualify for Medicaid assistance are entitled to have the expenses of most abortions paid for out of state welfare funds, which are substantially reimbursed by federal funds. However, they believe that the federal Medicaid provisions, Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., prohibit federal reimbursement for the expenses of an abortion unless there has been a determination that the abortion is medically necessary, by which they appear to mean that without the abortion the woman's physical or psychiatric health will suffer. Believing that federal law requires such a determination, they have adopted a regulation,[1] Connecticut Welfare Department, Public Assistance Program Manual, Vol. 3, Ch. III, § 275, designed to secure prior medical certificaion that an abortion is necessary. Whether this regulation is required by or permitted by federal law is the question in this case.

---

1. The substantive portion of the regulation provides as follows:

   . . . Therapeutic abortion services within the State are covered under Title XIX when all the following conditions are met:

1. The abortion is recommended as medically or psychiatrically necessary by the attending physician and the Chief of Obstetrics and Gynecology in accredited hospitals . . . .

The suit is brought by two women eligible for Medicaid payments. Both are receiving Aid to Families with Dependent Children. Plaintiff Poe had an abortion in September, 1973, for which the welfare department has refused to pay the hospital bill of $244.20. Plaintiff Roe, who was pregnant at the time the suit was filed, obtained by consent of the parties a temporary restraining order, preventing the defendant welfare officials from refusing to pay the costs of her abortion. Neither plaintiff submitted to welfare authorities the certification, required by § 275, from the attending physician and the chief of obstetrics and gynecology of an accredited hospital that the abortion is "recommended as medically or psychiatrically necessary." In attacking § 275, plaintiff Roe seeks to represent a class consisting of all women who are eligible for medical assistance from the State of Connecticut and who are pregnant and have been refused said assistance for the performance of an abortion which they have requested and which has been authorized by a physician.

The suit challenges § 275 as contrary to the Social Security Act and in violation of the United States Constitution. Jurisdiction of the action, brought under 42 U.S.C. § 1983, is conferred by 28 U.S.C. § 1343(3). The constitutional claim is plainly substantial enough to invoke the jurisdiction of this Court and to justify consideration of the pendent statutory claim, see Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), without convening a three-judge court, 28 U.S.C. § 2281, or considering whether decisions of the Supreme Court in Roe v. Wade, *supra*, and Doe v.

Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), have obviated the need for a three-judge court to rule on the constitutional claim. *Cf.* Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

At oral argument, the defendants were specifically asked whether they had adopted the challenged regulation to implement a state policy or whether the regulation was in force only because defendants believed it was required by federal law. Their position was that the regulation was adopted only because of federal law and would not otherwise be in force.[2]

Defendants contend that the provisions of Title XIX limit the availability of Medicaid funds to "necessary medical services." Before the meaning of that phrase is considered in the context of abortion services, there is a threshold question as to whether the phrase applies as a limitation on *services* eligible for Medicaid payments. In Title XIX, the phrase appears only as a limitation on *persons* eligible for Medicaid payments. Thus, 42 U.S.C. § 1396 authorizes appropriations to enable states to furnish "medical assistance" to welfare recipients "whose income and resources are insufficient to meet the costs of necessary medical services." Similarly, 42 U.S.C. § 1396a(a)(10)(B)(i) permits a state to include in its plan persons not on welfare who would be eligible for welfare if needy and who lack sufficient income and resources to meet the costs of "necessary medical or remedial care and services." But the assistance to be made available to those who are eligible is always described simply as "medical assistance" without the adjective "neces-

---

2. THE COURT: . . . Is the defendant's position that Federal law gives the State the choice whether to pay for what you call non-therapeutic abortions and the State of Connecticut has chosen not to participate in a reimbursement program for that procedure?
MR. WALSH: No, your Honor.
THE COURT: It is not that?
MR. WALSH: No.
THE COURT: Your point then . . . is that Federal law prohibits the State from

extending Medicaid service to a pregnant woman as to whom a doctor does not certify medical necessity?
MR. WALSH: Her own attending physician.
THE COURT: And that if the Federal statute in fact did not put that restriction in your way, that no state policy would preclude participation in the reimbursement program?
MR. WALSH: That's correct.

sary." See, *e. g.,* 42 U.S.C. §§ 1396, 1396a(a), 1396a(a)(10). In particular, the detailed statutory definition of "medical assistance," 42 U.S.C. § 1396d, contains no reference to medical necessity and does include broadly "medical care, or any other type of remedial care recognized under State law, furnished by licensed practitioners within the scope of their practice as defined by State law." 42 U.S.C. § 1396d(a)(6).

Thus from the terms of the statute, it would be entirely plausible to conclude that a person who lacks sufficient income or resources to pay for necessary medical services· is eligible to receive Medicaid payments for any medical care whatever. Under that construction, for example, the person too poor to afford an emergency appendectomy would be entitled to payment for elective cosmetic surgery.

Defendants oppose this construction, contending that a limitation of Medicaid payments to those medical services that are necessary should be read into Title XIX from the Medicare provisions of Title XVIII. That title specifically excludes payment for items or services "which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1). While the existence of this exclusion in the Medicare provisions stands in curious contrast to the absence of any similar provision in the Medicaid provisions, there is some force to defendants' contention that the legislative history supports a common interpretation of both titles. See U.S.Cong. & Admin.News (1965) pp. 1943, 1986, 1989. Moreover it is not likely that Congress intended to provide broader benefits to the indigent than to those who were purchasing coverage under Medicare.

■ Even if it is assumed *arguendo* that Medicaid payments are limited to necessary medical services, the question remains whether an elective abortion, not performed to avoid any physical or psychiatric impairment, is "necessary" within the meaning of what at most would be an implied limitation of Title XIX. Contrary to defendants' argument, the fact that the doctors of these plaintiffs have not certified their abortions as necessary does not mean that their abortions were not within a proper construction of the Medicaid statute. The doctors were acting well within their field of expertise in concluding that in neither case did the plaintiff's physical or psychiatric health require an abortion as an alternative to childbirth. But whether that circumstance excludes these abortions from the coverage of a federal statute is a question of law, not of medicine.

■ There is nothing in the text or legislative history of the statute to suggest that when a patient's condition requires medical attention, each alternative form of medical service that might be rendered must be deemed to be necessary to qualify for federal reimbursement. Such a notion would be contrary to the basic philosophy of both the Medicare and Medicaid provisions, which emphasizes the wide discretion to be accorded physicians in treating their patients. It may well be that where a condition does not require any medical attention whatever, such as a disfiguring scar, cosmetic surgery at the patient's request is not covered by the statute. However, when a patient's condition does require some medical attention, the choice of service to be rendered should normally be a matter between doctor and patient, and the service they select is eligible for payment, so long as it is an accepted medical procedure, and does not involve costs that are excessive compared to adequate alternatives.

These plaintiffs had a physical condition that plainly required the rendering of medical service. The condition was pregnancy. The choice of service, whether childbirth or abortion, was a matter between patient and physician. Either service is equally eligible for Medicaid payment. The defendants do

not contend that the expenses of childbirth are not necessary even though the patient could have elected an abortion. By the same token, the expenses of an abortion are no less necessary simply because the patient could have elected childbirth. Defendants do not suggest that the abortion alternative is more costly than childbirth.

■ The views of the agency administering the statute have weight in determining its proper construction, Lewis v. Martin, 397 U.S. 552, 559, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); see Zemel v. Rusk, 381 U.S. 1, 11–12, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965), and the United States Department of Health, Education and Welfare has expressed its views in this litigation that the Medicaid provisions do not exclude any abortions. In a letter to plaintiffs' counsel, the associate commissioner of the HEW's Social and Rehabilitation Service stated that "under Title XIX, federal financial participation is available for any abortions for which the state welfare agency provides payment."

■ Any construction of Title XIX that would prohibit payment for elective abortions or permit state regulations that burden a woman's election to have an abortion, at least within the first two trimesters of pregnancy, would raise substantial constitutional questions in light of the Supreme Court's decisions in Roe v. Wade, supra, and Doe v. Bolton, supra. While the constitutional right to have an abortion does not necessarily carry with it a constitutional right to a free abortion, a statute that provides payment to the needy for medical expenses would encounter constitutional obstacles if it were construed to weight the choice of a pregnant woman

against electing the abortion that is her constitutional right to choose. Government is not required by the Constitution to pay for any medical service, but once it decides to provide payments, it must not unduly disadvantage those who exercise a constitutional right. Cf. Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (Feb. 26, 1974); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Hathaway v. Worcester City Hospital, 475 F.2d 701 (1st Cir. 1973); Klein v. Nassau County Medical Center, 347 F.Supp. 496 (E.D.N.Y.1972), vacated and remanded for reconsideration in light of Roe v. Wade, supra, and Doe v. Bolton, supra, 412 U.S. 925, 93 S.Ct. 2748, 37 L.Ed.2d 152 (1973).

■ To implement the policy of noninterference in the doctor-patient relationship and to avoid doubts as to constitutionality, Title XIX must be construed to permit payment for elective abortions and to prohibit state regulations that impair a woman's exercise of her right, in consultation only with her physician, to have an abortion. Doe v. Rose, 380 F.Supp. 779 (D.Utah 1973); Klein v. Nassau County Medical Center, supra.

■ For these reasons, plaintiff Roe and the class she represents, Fed.R.Civ. P. 23(b)(2), are entitled to a judgment declaring that § 275 concerning abortion services is invalid as contrary to the Medicaid provisions of the Social Security Act, and enjoining defendants from enforcing it.[3] This does not mean that the subject of Medicaid payments for abortions is insulated from all state regulation. However, to insure that the Med-

---

3. Plaintiff Poe also seeks relief to secure payment for an elective abortion already performed and seeks to represent a class consisting of women eligible for medical assistance benefits who were pregnant and underwent abortions after January 22, 1973, and for whom Medicaid payments have not been made. In view of the defendants' position that they have been enforcing § 275 only because they

thought it required by federal law, there is no reason to assume that further controversy exists over these payments, now that the state regulation has been declared to be contrary to federal law and its enforcement enjoined. If issues concerning payment for past abortions remain, plaintiff Poe and members of the class she seeks to represent may apply for a supplemental judgment.

icaid statute is not implemented in a way that impairs the exercise of constitutionally protected rights, no state regulation of Medicaid payments for abortions performed in the first trimester of pregnancy can impose conditions or requirements that are not equally applicable to Medicaid payments for childbirth, and for abortions performed in the second trimester of pregnancy, no conditions or requirements can be imposed inconsistent with the standards set forth by the Supreme Court in Doe v. Bolton, *supra*.