**Jane DOE, on behalf of herself and all others similarly situated, et al., Plaintiffs-Appellees,**

v.

**Paul S. ROSE, Individually and in his capacity as Executive Director of the Utah State Department of Social Services, Defendant-Appellant.**

**No. 73–1736.**

United States Court of Appeals, Tenth Circuit.

June 27, 1974.

David S. Dolowitz, Salt Lake City, Utah, for plaintiffs-appellees.

Willard Michael Howery, Asst. Atty. Gen. (Joseph McCarthy and William C. Loos, Asst. Attys. Gen., on the brief), for defendant-appellant.

Before DURFEE,* Judge, and HILL and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

The issue here presented concerns the propriety of a so-called informal policy in Utah concerning abortions and the circumstances under which they would be paid for by federal-state welfare funds. Though the policy had not been reduced to writing, it nonetheless was followed by Paul S. Rose, the Executive Director of the Utah State Department of Social Services, in his administration of welfare monies.

Rose's policy was that an indigent pregnant woman entitled to medical services and care for her pregnancy under the Medicaid program is not entitled to an abortion at the expense of Medicaid unless application therefor is approved by him, in his official capacity, in advance of the operation as being a "therapeutic" abortion. A "therapeutic" abortion, in turn, is defined by Rose as one necessary to save the life of the expectant mother or to prevent serious and permanent impairment to her physical health, and none other.

The trial court concluded, in effect, that such policy was certainly not required by either the state or federal statutes relating to medical care and services for the indigent, and that, on the contrary, under applicable federal statutes [1] Rose was actually without authority to deny payment for abortions unless such were deemed therapeutic under his definition of that word. The trial court additionally held the policy to be at odds with the Fourteenth Amendment. Accordingly, the trial court enjoined Rose from enforcing his policy concerning abortions and when they would be paid for by Medicaid. As will be developed, we prefer to dispose of this appeal on constitutional grounds, and we affirm on that basis. Some background facts will place the controversy in context.

Jane Doe, Jane Roe and Jane Poe are all eligible for categorical assistance under Medicaid. At the time the present proceeding was instituted in the trial court, each was pregnant, Jane Doe and Jane Roe being in the second trimester of their respective pregnancies, and Jane

---

\* Honorable JAMES R. DURFEE, Court of Claims, sitting by designation.

1. Act of July 30, 1965, Pub.L. 89–97, Title I, § 121(a), 79 Stat. 343, as amended, *codified at* 42 U.S.C. § 1396 et seq. (1970).

Poe being in her first trimester. Each sought an abortion at the University of Utah Hospital, and in each instance the proposed abortion was approved by the hospital staff as being medically appropriate. However, the hospital authorities had been put on notice by Rose that there would be no reimbursement by Medicaid for any abortion unless an application therefor was made to him, Rose, prior to the operation and approved by him as being a therapeutic abortion. As concerns the proposed abortion of the three, though each had been deemed medically appropriate by the hospital staff, none was *therapeutically* necessary under Rose's definition of that word. It was in this setting that the three pregnant women went to court.

Doe, Roe and Poe instituted the present action in the United States District Court for the Central Division of Utah on behalf of themselves and all others similarly situated. As indicated, the one defendant was Paul S. Rose, individually and in his official capacity as Executive Director of the Utah State Department of Social Services.

▄ In their complaint the plaintiffs sought a declaration that Rose's abortion policy be declared illegal and that Rose be enjoined from enforcing it. Upon hearing, after notice, the trial court granted a preliminary injunction enjoining Rose from enforcing the policy here in question, and plaintiffs Roe, Doe and Poe, and possibly others similarly situated, were then aborted. Later the parties agreed upon a stipulated statement of facts, and then each moved for summary judgment based on such stipulation.

The trial court denied Rose's motion for summary judgment, and granted the motion filed by the plaintiffs. In accord therewith the trial court [2] then permanently enjoined Rose from refusing to disburse Medicaid funds for the payment of nontherapeutic abortions. Rose now appeals. We affirm.

At the outset, so far as we are advised the applicable federal statutes regarding Medicaid make no mention, as such, of abortions. Hence, we lack specific guidance as to whether Congress intended that abortions be covered by Medicaid and, if so, more critically, *which* abortions were to be covered by Medicaid benefits. The import, however, of the federal statutory scheme is that indigents who qualify for Medicaid benefits are to receive all necessary medical and hospital care, and in connection therewith the respective states are empowered to impose reasonable standards for carrying out the objectives of the federal program.

The implementing state statutes of Utah, as well as the latter's state plan, submitted to and approved by the federal authorities, also make no mention, as such, of abortions. Hence, this is not an instance where the administrative policy under attack is mandated by either state or federal statute. By the same token, in our view there is nothing in either the federal or state statutes which specifically bars the policy here followed by Rose. In this regard, we are mindful of the Supreme Court's preference for statutory, as opposed to constitutional, resolution of welfare controversies. See Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970). Nev-

2. In the trial court there was apparently no suggestion that this was a three-judge case under the provisions of 28 U.S.C. § 2281. In this court, though the appellant discusses the constitutional issue on its merits, he alternatively suggests that the constitutional issue should have been heard by a three-judge court, rather than a single judge. In our view, an informal policy of the type here involved which is not mandated by state statute is not within the purview of 28 U.S.C. § 2281. We thus view the instant case as falling within an exception to the three-judge court requirement which arises when only erroneous administrative action, taken pursuant to an otherwise constitutional statute, is challenged. *See* Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); and Donahue v. Staunton, 471 F.2d 475 (7th Cir. 1972), cert. denied, 410 U.S. 955, 93 S. Ct. 1419, 35 L.Ed.2d 687 (1973).

ertheless, in light of the applicable statutes' complete silence on the abortion question, we prefer to dispose of the present appeal on constitutional grounds, rather than by any strained effort to show that the policy in question is, in effect, though not in so many words, prohibited by either federal or state statute. To reiterate, then, since the abortion question finds its first, and only, mention in the informal policy of Rose, this policy, and not any federal or state statute relating to Medicaid, is the heart of the present controversy.

■■■ We see no need to here review in detail the nature of the federal-state relationship in the broad field of welfare benefits for the indigent. It is sufficient to simply note that a state need not, in the first instance, participate at all in the various federal welfare programs, and that should a state decide to participate, then the degree of its participation is also a matter to be determined by the state. However, once a state elects to participate in a federal welfare program, it must follow federal statutes and regulations and must also administer the program in a constitutional manner. *See* Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), and King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). In fact, even a state welfare program funded entirely by the state must be administered in a manner consistent with the United States Constitution. New Jersey Welfare Rights Org. v. Cahill, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973). At the same time, however, a state does have considerable latitude in dispensing its available welfare funds, and accordingly a state regulation concerning the disbursement of welfare funds which is "rationally based and free from invidious discrimination" will not offend the Constitution and is to be given effect. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Proceeding from these general principles to the case at hand, we deem Doe v. Rampton, 366 F.Supp. 189 (D.Utah 1973) (three-judge court), to be particularly helpful in disposing of the present appeal. That case involved the constitutionality of a series of Utah statutes regulating abortions. Section 314 of the statute there under consideration declared, *inter alia,* that no public assistance grant, medical or otherwise, may be used for an abortion. This section further provided that no state funds could be used to pay for abortions unless the abortion was necessary to save the life of the pregnant woman or to prevent serious and permanent injury to her physical health.

In Doe v. Rampton, the aforesaid § 314 of the Utah statute was held to be unconstitutional under the Ninth and Fourteenth Amendments, the court stating that such provision is invalid because it would limit the exercise of the right to an abortion in all trimesters, for reasons having no apparent connection to the health of the mother or child. And in that case the court went on to declare in so may words that "the State may not use its Medicaid program to limit abortions." We generally agree with these pronouncements.

■■ In the instant case, we are concerned, not with a statute, but with an informal policy of the Executive Director of the Utah State Department of Social Services which is almost identical to the aforesaid § 314. Each would preclude an indigent pregnant woman from receiving an abortion at the expense of public welfare funds unless the abortion was necessary to save her life or prevent serious and permanent damage to her physical health, regardless of her trimester. If a statute to such effect is invalid, as was the holding in Doe v. Rampton, it would seem to logically follow that an informal policy to the same effect is also invalid. And we so hold.

■■ Without analyzing in depth Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d

201 (1973), a contrary holding in the instant case would in our view fly in the face of those two cases. The Supreme Court's decisions in *Wade* and *Bolton* clearly indicate that in the absence of a compelling state interest a state may not bar all abortions, except those necessary to protect the health of the mother, regardless of the trimester. A statute thus limiting abortions violates the constitutional right to privacy of pregnant women, at least those in their first or second trimesters, who during the first six months of their pregnancy have a qualified right to terminate their pregnancies. *Cf.* Buckley v. Coyle Public School System, 476 F.2d 92 (10th Cir. 1973), suggesting a violation of the privacy protected by the Fourteenth Amendment when a teacher must choose between pregnancy and employment.

Two analogous cases supportive of our disposition of this appeal are Hathaway. v. Worcester City Hospital, 475 F.2d 701 (1st Cir. 1973), and Klein v. Nassau County Medical Center, 347 F.Supp. 496 (E.D.N.Y.1972) (three-judge court). In *Hathaway,* a challenge was made to a city hospital policy which barred use of the hospital facilities for the purpose of performing a consensual sterilization. In holding that such a policy was violative of the Equal Protection clause of the Fourteenth Amendment, the First Circuit observed that, after the Supreme Court decisions in *Wade* and *Bolton*, it is clear that in this type of case a "fundamental interest is involved, requiring a compelling rationale to justify permitting some hospital procedures and banning another involving no greater risk or demand on staff and facilities." The First Circuit, recognizing, as do we, that questions of Equal Protection arise more frequently in the context of affirmative state sanctions, at the same time indicated that "any infringement of a fundamental interest, including a simple denial of a benefit must be carefully scrutinized." In *Hathaway* the First Circuit then additionally commented as follows:

"In so holding, we are not mandating the city or state to maintain this hospital, or to retain its present size, staff or facilities. The hospital is not required to perform all kinds of nontherapeutic or even all therapeutic surgical procedures. We are merely saying, consistent with the Supreme Court's reasoning in *Shapiro* [Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)] with regard to welfare payments, that once the state has undertaken to provide general short-term hospital care, as here, it may not constitutionally draw the line at medically indistinguishable surgical procedures that impinge on fundamental rights. * * * "

In *Klein,*[3] the challenge was to an administrative letter, apparently mandated by state statute, which declared that "elective abortions not medically indicated" were not covered by Medicaid. The effect of such policy was that the only abortions paid for by Medicaid were those performed within twenty-four weeks from the commencement of the pregnancy where the life or health of the mother or the unborn child were involved. In holding that such administrative directive thus limiting abortions would deny indigent pregnant women the equal protection of the laws to which they were constitutionally entitled, the three-judge court in *Klein* declared as follows:

"The directive, and the State statute, if interpreted as mandating the Commissioner's directive, would deny indigent women the equal protection of the laws to which they are constitutionally entitled. They alone are subjected to State coercion to bear chil-

---

3. The Supreme Court vacated the judgment in Klein, and remanded for reconsideration in the light of *Wade* and *Bolton*. *See* 412 U.S. 925, 93 S.Ct. 2748, 37 L.Ed.2d 152 (1973). However, because we find strong support in those decisions for our resolution of the case at bar, we are also of the opinion that the remand does not affect the viability of the language here quoted from *Klein.*

dren which they do not wish to bear, and no other women similarly situated are so coerced. Other women, able to afford the medical cost of either a justifiable abortional act or full term child birth, have complete freedom to make the choice in the light of the manifold of considerations directly relevant to the problem uninhibited by any State action. The indigent is advised by the State that the State will deny her medical assistance unless she resigns her freedom of choice and bears the child. She is denied the medical assistance that is in general her statutory entitlement, and that is otherwise extended to her even with respect to her pregnancy. She is thus discriminated against both by reason of her poverty and by reason of her behavioral choice. No interest of the State is served by the arbitrary discrimination; it reflects no genuine exclusion from benefit by operation of a classification founded on an identifiable state interest served by the denial of medical assistance. *Certainly the denial of medical assistance does not serve the State's fiscal interest, since the consequence is that the indigent may then apply for prenatal, obstetrical and post-partum care and for pre-* *natal support for the unborn child. \* \* \* "* (Emphasis added).

Any suggestion here that Rose's informal policy serves to protect the public fisc from expenditures for "unnecessary" medical treatment of indigents is unavailing. *See* Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), where "conservation of the taxpayers' purse" was held not to be sufficient to meet the "compelling state interest" standard which must be satisfied where fundamental rights are concerned. In sum, then, there is nothing in the record before us to indicate that Rose's informal policy concerning abortions stems from any "compelling state interest" or, under the more lenient test, is otherwise "rationally based." At least there is most certainly nothing in the stipulation of facts to indicate such. To the contrary, in our view the record only lends itself to the conclusion that Rose's broad abortion policy is intended to limit abortion on moral grounds.[4] Under the authorities above cited, such policy constitutes invidious discrimination and cannot be upheld under constitutional challenge.

Judgment affirmed.

---

4. See in this regard the recent case of Doe v. Wohlgemuth, 376 F.Supp. 174 (W.D.Pa.) (three-judge court), decided May 3, 1974. which parallels both the constitutional issues presented to us and our resolution of them. In *Wohlgemuth* the following pertinent comment appears:

"It must be noted that in dealing with the issues in this case we are precluded from the treatment of abortion on moral grounds, nor are we dealing with abortion in its criminal aspects. We must follow the course which recognizes that the law does not represent itself as a moral code, but rather, as a body of rules wherein the majority of the people impose their will, and, within constitutional limits, invade the freedom of the individual, in the interest of public health and welfare. Whatever may be the private view of the individual or group of individuals, or the members of this Court, we are bound by the now established principle of law that a negation of an individual's choice in the matter of abortion during the first trimester of pregnancy is an unwarranted invasion of that person's fundamental rights as established by the Fourteenth Amendment to the Constitution of the United States."