Rachel ROE et al., Plaintiffs-Appellees,

v.

Joseph T. FERGUSON, Individually and in his capacity as Auditor of the State of Ohio, and Charles W. Bates, Individually and in his capacity as Director of the Ohio Department of Public Welfare, Defendants-Appellants.

No. 74–2195.

United States Court of Appeals, Sixth Circuit.

April 28, 1975.

William J. Brown, Atty. Gen. of Ohio, Columbus, Ohio, Thomas V. Martin, Asst. Atty. Gen., for defendants-appellants.

Linda K. Champlin, Robert Newman, Clyde Ellis, American Civil Liberties Union of Ohio Foundation Inc., Robert L. Mullinax, Ohio State Legal Services, Columbus, Ohio, for plaintiffs-appellees.

Before PECK and MILLER, Circuit Judges, and HERMANSDORFER,* District Judge.

WILLIAM E. MILLER, Circuit Judge.

The district court held the Ohio statutory provision (Ohio Rev.Code, Sec. 5101.55(C)) and administrative rulings thereunder, prohibiting the use of state or local funds to pay for an abortion unless the abortion was necessary to preserve the life or physical or mental health of the pregnant woman, to be in conflict with the federal Social Security Act. 42 U.S.C. § 1396a. Enforcement

---

* Honorable H. David Hermansdorfer, Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

of the Ohio statute and administrative policy was accordingly enjoined by the court's judgment entered September 16, 1974.[1]

Previously, on February 14, 1973 in Doe v. Brown,[2] the district court for the Southern District of Ohio, had nullified on constitutional grounds the Ohio criminal law proscribing the performance of certain abortions. Nevertheless, on February 21, 1974, defendant Ferguson, Auditor of the State of Ohio, wrote the Director of the Ohio Department of Welfare, announcing the policy that the auditor would not sign warrants for any vouchers arising from the Ohio Medicaid program from physicians seeking reimbursement for "any Elective Abortion bills."[3] Subsequently, the state statute prohibiting the use of state or local public funds to pay for abortions not "necessary to preserve the life or physical or mental health" of the pregnant woman, became law on June 17, 1974.[4] This law was to have taken effect on September 16, 1974, but was declared void by the district court in the present case.

The plaintiffs challenging Ohio's policy and statute, may be classified in four groups: pregnant welfare recipients, physicians who perform abortions for welfare recipients, clinics in which physicians perform such abortions, and the

National Organization of Women (NOW). In this action plaintiffs challenged the auditor's policy and the state statute as being inconsistnt with the Social Security Act, Title XIX, 42 U.S.C. § 1396 et seq., and also as being violative of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. The district court on September 16, 1974 sustained the motion of plaintiffs for summary judgment, finding that there was no disputed issue of material fact and that the state statute and policy were not as a matter of law in conformity with the mandatory provisions of the federal Social Security Act, 42 U.S.C. § 1396 et seq. By thus construing the federal statute as prohibiting states participating in the Medicaid program from distinguishing expenses for elective abortions from all other medical expenses, the court avoided the constitutional questions raised by plaintiffs.

Three issues are presented on appeal: (1) Whether the policy of the Ohio state auditor and Ohio Rev.Code, § 5101.55(C), by restricting the payment of Medicaid funds to abortions necessary to preserve the mental or physical health of the pregnant woman, are in conflict with the provisions of the Social Security Act; (2) Whether the Ohio statute and policy vio-

1. It has been recognized that "the joining in the complaint of a nonconstitutional attack along with the constitutional one does not dispense with the necessity to convene" a three-judge court in an action to enjoin enforcement of a state statute. Florida Lime Growers v. Jacobsen, 362 U.S. 73, 80, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960). However, the practice of a single judge resolving the statutory claim and thus possibly obviating the need for a three-judge court to consider the constitutional claim has been expressly approved by the Supreme Court as in compliance with 28 U.S.C. § 2281. Hagans v. Lavine, 415 U.S. 528, 543–45, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). The Supreme Court has gone so far as to vacate the judgment of the three-judge court in Doe v. Westby, 383 F.Supp. 1143 (D.South Dakota 1974), which held a statute similar to that of Ohio violative of the equal protection clause, without considering a statutory ground, and remand the case for further consideration in light of Hagans v. Lavine, *supra*. —— U.S. ——, 95 S.Ct. 1385, 43 L.Ed.2d 648 (1975).

In any event, even under the law as it stood before *Hagans*, it would be permissible to appeal to the court of appeals from the final order of a single district judge, basing his decision solely on statutory grounds, in a case in which a state statute was attacked on the grounds that it was both unconstitutional and in conflict with a federal statute. Lemke v. Farmers Grain Co., 258 U.S. 50, 52–53, 42 S.Ct. 244, 66 L.Ed. 458 (1922). This court thus has jurisdiction to hear this appeal.

2. *See* Doe v. Brown (Civil No. 73–46) (S.D. Ohio 1973).

3. This policy was reaffirmed by a second letter sent on May 30, 1974, stating that certain classes of vouchers relating to elective abortions would not be paid under any circumstances while other classes of vouchers would be returned to the Department requesting a signed statement from the physician indicating the reason for the abortion procedure.

4. Ohio Rev.Code Sec. 5101.55(C).

late the 9th and 14th amendments, thus providing an alternative ground for affirmance; and (3) Whether this Court has jurisdiction to consider the constitutional issues presented.

■ Although not raised by the parties, we first consider a preliminary issue of standing.[5] It may be judicially noticed that the outcome of this case can be of no immediate concern to the pregnant welfare recipients named as plaintiffs. However, at the date of the filing of the case there can be no dispute that these plaintiffs, as pregnant indigent women, presented a justiciable case or controversy and thus had standing to challenge the state statute and policy. Roe v. Wade, 410 U.S. 113, 124, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The termination of plaintiffs' pregnancy cannot be considered to have rendered their case moot since the condition is capable of repetition and termination before future appellate review could be obtained. *Id.* at 125, 93 S.Ct. 705.

■ With regard to the standing of the plaintiff physicians, recent cases have settled the right of physicians in the practice of medicine to assert their constitutional rights to advise and perform abortions for indigent women. Doe v. Bolton, 410 U.S. 179, 187–89, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Crossen v. Breckenridge, 446 F.2d 833, 839–40 (6th Cir. 1971). That plaintiff physicians in this case are not threatened with criminal prosecutions does not compel a different result. Nyberg v. City of Virginia, 495 F.2d 1342, 1344 (8th Cir. 1974); Wulff v. Singleton, 508 F.2d 1211 (8th Cir. 1974).

In view of our ruling as to the standing of the above mentioned plaintiffs, it is unnecessary to resolve the issue of the standing of the other plaintiffs. The issues are sufficiently and adequately presented by the plaintiffs Roe and Joe and plaintiff physicians. Nothing would be gained or lost by the absence or presence of the other plaintiffs as parties. Roe v. Wade, 410 U.S. 113 at 127, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Doe v. Bolton, 410 U.S. 179 at 189, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

Plaintiffs first contend, and the district court held, that the state statute and the policy of the state auditor are in conflict with the provisions and purposes of the Medical Assistance Program of the Social Security Act.[6] (Medicaid). Medicaid is a federal grant-in-aid project. A state's involvement is voluntary. For a state to receive federal monies, however, its implementation of the program must meet federal requirements. Title XIX of the Social Security Act establishes a comprehensive scheme of medical care for the needy to be administered by the states and jointly funded by the federal and state governments. The Ohio statutes implementing the program extend medical assistance to all recipients of Aid to Families with Dependent Children (AFDC),[7] and other programs subsumed under Ohio Rev. Code § 5101.51 and Ohio Rev.Code, Chapter 5107.

For welfare recipients covered by the statutory scheme, Title XIX provides that states must provide the following minimal services: (1) inpatient hospital services; (2) outpatient hospital services; (3) other laboratory and x-ray services; (4) skilled nursing facility services, screening and diagnosis of children, and family planning services; and (5) physicians' services. 42 U.S.C. §§ 1396a(a)(13), 1396d(a)(1)–(5).[8]

5. This case was not instituted as a class action and only the named plaintiffs are parties to the suit.

6. 42 U.S.C. § 1396 et seq.

7. 42 U.S.C. § 601 et seq.

8. A state may increase its Medicaid coverage to individuals in addition to the basic four categories of needy persons set forth in the Social

Security Act. The services required to be supplied to these additional individuals are either the services falling under the five basic classifications or, alternatively, those services falling under any seven classifications of a longer list. *See* 42 U.S.C. §§ 1396a(a)(10)(B), 1396a(a)(13)(C), 1396d(a)(1)–(17). There is no indication in this case, however, that Ohio has chosen any alternative classifications of serv-

Plaintiffs argue that the abortion services excluded from coverage by the state of Ohio may properly fall within the definition of either physicians' services, inhospital services, outpatient services, or family planning services.

A number of courts have confronted the question whether a state's exclusion of Medicaid funds for abortions not required for the physical or mental health of the pregnant women can be overturned on purely statutory grounds. In Roe v. Norton, 380 F.Supp. 726 (D.Conn. 1974), it was argued that the federal statute should be construed to prohibit federal reimbursement for the expenses of an abortion unless the abortion is to prevent a detriment to the woman's physical or psychiatric health. The court there held that the language in the federal statute authorizing the reimbursement for "necessary medical services" [9] does not permit the exclusion of any abortions and that the state statutory restriction was therefore invalid. While the court based its holding on statutory grounds, it is evident that this approach was resorted to to "avoid doubts as to the constitutionality" of the state statute. 380 F.Supp. at 730.[10]

Other courts faced with the same question have refused to find that such state policies are in conflict with the federal statute, preferring to base their holdings on constitutional grounds. The earliest federal court decision came from New York in 1972. Klein v. Nassau County Medical Center, 347 F.Supp. 496 (E.D.N.Y.1972) aff'd sub nom. Ryan v. Klein, 412 U.S. 924, 93 S.Ct. 2747, 37 L.Ed.2d 151 (1973), but vacated and remanded in light of Roe v. Wade and Doe v. Bolton, 412 U.S. 925, 93 S.Ct. 2747, 37 L.Ed.2d 152 (1973). The Klein court observed that "[m]edical assistance for

abortion is not less 'necessary' because an election to bear the child would obviate that medical assistance and require instead other, more extensive and more expensive medical assistance," and that abortion services are thus "provided under the Medicaid program as 'necessary' medical assistance." Id. at 500. The court, however, refused to rely solely on statutory grounds, basing its decision primarily on the equal protection clause.

In a more recent case, Doe v. Rose, 499 F.2d 1112 (10th Cir. 1974), the abortion policy of the State of Utah, similar to the Ohio policy, was challenged on both statutory and constitutional grounds. Addressing itself first to the statutory ground of attack, the Rose court noted that the federal Medicaid statute makes no mention of abortion. The court thus felt that it lacked "specific guidelines as to whether Congress intended that abortions be covered by Medicaid and, if so, more critically, which abortions were to be covered by Medicaid benefits." 499 F.2d at 1114. Although it recognized that preference is to be given statutory, as opposed to constitutional, resolution of welfare controversies, the court nevertheless stated that:

in light of the applicable statutes' complete silence on the abortion question, we prefer to dispose of the present appeal on constitutional grounds, rather than by any strained effort to show that the policy in question is, in effect, though not in so many words, prohibited by [the] federal . . . statute. Id. at 1115.[11]

A similar policy of the State of Pennsylvania limiting Medicaid reimbursement to "medically necessary" abortions was under attack in Doe v. Wohlgemuth,

---

ices to provide certain needy individuals or that the plaintiffs in the case do not fall within the basic four categories of needy persons.

**9.** 42 U.S.C. § 1396.

**10.** In this case, unlike Roe v. Norton, supra, defendant admits that Title XIX permits reimbursement of state payments for abortions not medically necessary. Defendant merely ar-

gues that Title XIX does not require a state to pay for such procedures.

**11.** The reason that a three-judge court was not convened in Doe v. Rose is that the policy under attack was an informal one not mandated by a state statute. The case thus fell within an exception to the three-judge court requirement. See Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941).

376 F.Supp. 173 (W.D.Pa.1974), vacated and remanded on other grounds, 505 F.2d 186 (3rd Cir. 1974). In that case a three-judge district court reasoned that, even if it should be assumed that abortion payments are clearly authorized under Title XIX of the Social Security Act, it must nevertheless be recognized that "Congress has given the States great latitude in establishing standards for the administration of the various plans, under the doctrine of a 'scheme of cooperative federalism.'" 376 F.Supp. at 184, *quoting* from Dept. of Social Service v. Dublino, 413 U.S. 405, 413, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973).

The court analyzed the problem to be whether Pennsylvania had the latitude to determine when the performance of an abortion became a necessary medical service. Relying on Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the *Wohlgemuth* court went on to hold that, in light of the latitude afforded states in setting the level of benefits and standards of need in welfare administration, the Pennsylvania regulation did not conflict with Title XIX of the Social Security Act.[12]

■ We are in accord with the decisions which have found no conflict between state restrictions of Medicaid payments to elective abortions and the provisions of the Social Security Act. There is no indication that Congress intended to require the furnishing of abortion services not required for the preservation of the health of the woman at a time when the performance of such abortions was illegal in most jurisdictions. In view of the disfavor shown toward abortions in other legislation, we are reluctant to infer that Congress intended to include required coverage for such controversial services without even mentioning the subject. When Congress passed the Family Planning Services and Population Research Act of 1970, 42 U.S.C. § 300a et seq. providing funds to states opting to participate in creating comprehensive programs of family planning services, abortion was specifically excluded as a means of family planning to be recognized under the Act. 42 U.S.C. § 300a–6.

In establishing the Legal Services Corporation system, Congress again provided that no funds of the Corporation could be used for legal assistance for those seeking to procure a nontherapeutic abortion. 42 U.S.C. § 2996f(b)(8).

In view of this evidence of the Congressional attitude toward abortion as a family planning technique or as an acceptable medical service in general, it is difficult to construe the silence of Congress in Title XIX as an endorsement of the view that nontherapeutic abortions are included in the "necessary medical services" required to be furnished by a state participating in Medicaid. This is not to say that Congress may constitutionally exclude such abortion services from coverage in the Medicaid program. In the absence of a legislative history indicating a contrary position, however, we cannot say that the statute itself prohibits such an exclusion.

■ We turn to plaintiffs' contention that the Ohio state policy is constitutionally impermissible. Since plaintiffs' contentions were presented to the court below and appear in the record, it is argued that we should consider the constitutional issues even though the district court pretermitted them. It is generally true that an appellate court may consider grounds other than those relied upon by the district court. United States v. American Railway Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924); Dandridge v. Williams, 397 U.S. 471, 475, n.6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Yet, this procedure is necessarily inapplicable in a case in which a three-judge court is required under 28 U.S.C. § 2281 because an injunction is sought to restrain the enforcement of a state statute on grounds of its unconstitutionality.

12. The *Wohlgemuth* court, however, went on to find the Pennsylvania statute unconstitutional on equal protection grounds.

We are unable to agree that this case falls within the exception to the application of § 2281 which has been carved out by the courts in situations in which the constitutional issue has been clearly settled or resolved. This exception to the three-judge court requirement was expressed in Board of Supervisors of La. St. U. & A. & M. College v. Ludley, 252 F.2d 372, 376 (5th Cir.), cert. denied 358 U.S. 819, 79 S.Ct. 31, 3 L.Ed.2d 61 (1958):

> There can be no real dispute where each separate element on which the state relies to support the constitutionality of a statute has been clearly put to rest by the Supreme Court contrary to the contention of the state. *Cf.* Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

Although there have been a number of lower court decisions holding state statutes similar to the Ohio law unconstitutional, it cannot be said that the issue has been put to rest by the Supreme Court. In Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the Supreme Court condemned state action infringing the right to have an abortion. In those cases the Supreme Court did not consider the question of payment of expenses for abortion whether nontherapeutic or otherwise. We find ourselves, therefore, in disagreement with the Eighth Circuit's ruling in Wulff v. Singleton, 508 F.2d 1211 (8th Cir. 1974), that the unconstitutionality of this type of statute is so "obvious and patent" as to obviate the need for a three-judge court.

Plaintiffs further argue that we should reach the constitutional issues in this case since "[t]he policy behind the three-judge court will be adequately im-plemented if the court of appeals entertains the constitutional claims." Suffice it to say that it is not the proper function of this Court to second guess Congress as to the appropriate occasion for requiring a three-judge district court.

Neither does this case come within the exception to the three-judge court requirement which arises when erroneous administrative action taken pursuant to an otherwise constitutional statute is challenged. *See* Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941). It is unquestioned that what originally was an informal policy of the state auditor is now compelled by a state statute.

Our refusal to consider the merits of the constitutional issue presented for review does not mean that the claim is so insubstantial as not to require the impaneling of a three-judge court. Although there is judicial authority that statutes similar to the Ohio statute are violative of the equal protection clause [13] of the federal Constitution, the issue of substantiality is one to be determined in the first instance by the district judge in whose court the complaint is filed. In the present case, the district judge has already determined that the constitutional claim is not frivolous or insubstantial. We are of the opinion, therefore, that the action must be remanded to the district court for the convening of a three-judge district court.

The judgment of the district court is therefore reversed and the action is remanded with directions that the district judge request the Chief Judge of the Circuit to impanel a three-judge court to hear and determine the constitutional issues presented.

---

**13.** *See* Wulff v. Singleton, 508 F.2d 1211 (8th Cir. 1974); Doe v. Rose, 499 F.2d 1112 (10th Cir. 1974); Doe v. Westby, 383 F.Supp. 1143 (D.South Dakota, 1974), judgment vacated and case remanded — U.S. —, 95 S.Ct. 1385, 43 L.Ed.2d 648 (1975), Doe v. Wohlgemuth, 376 F.Supp. 173 (W.D.Pa.1974), vacated and remanded on other grounds, 505 F.2d 186 (3d Cir. 1974); Klein v. Nassau County Medical Center, 347 F.Supp. 496 (E.D.N.Y.1972), aff'd sub nom. Ryan v. Klein, 412 U.S. 924, 93 S.Ct. 2747, 37 L.Ed.2d 151 (1973), but vacated and remanded in light of Roe v. Wade and Doe v. Bolton, 412 U.S. 925, 93 S.Ct. 2747, 37 L.Ed.2d 152 (1973).