D_____ R_____, on behalf of herself and all other persons similarly situated, Plaintiff-Appellant,

v.

Anthony MITCHELL et al., Defendants-Appellees.

No. 78–1675.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 25, 1980.

Decided March 10, 1980.

David S. Dolowitz of Parsons, Behle & Latimer, Salt Lake City, Utah, for plaintiff-appellant and A. C. L. U.

Paul M. Tinker, Asst. Atty. Gen., State of Utah, Salt Lake City, Utah (Robert B. Hansen, Atty. Gen., Salt Lake City, Utah, with him on brief), for defendants-appellees.

Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.

SETH, Chief Judge.

This appeal concerns the use of public assistance funds for abortions in the State of Utah. The Utah-federal relationship in the administration of Social Security Act programs and welfare program is typical. The particular program here concerned is the Aid to Families with Dependent Children (AFDC) under 42 U.S.C. § 601 and following, and the Medicaid Assistance program under 42 U.S.C. § 1396 and following. Utah had chosen to participate in both programs and to administer the combined funds thereunder. 42 U.S.C. § 1396 provides generally that "medical assistance" be provided to those eligible when the resources of the individual are not enough to pay for "necessary medical services."

We do not have the necessary parties before us to give complete consideration to the statutory issue including the Hyde Amendment. The Government is not a party under 28 U.S.C. § 2403(a). Thus we will start with the Constitutional issue, and discuss together the due process and equal protection issues as separate consideration does not seem warranted.

The Utah statute does not permit public assistance funds to be used for abortions unless the life of the mother is endangered. The plaintiff challenged the statute as a violation of the fourteenth amendment, and also on the ground that it was contrary to Title XIX of the Social Security Act of 1965.

The trial court held that the state statute so limiting abortions was effective to support the defendants' actions and was valid as against the challenge. The plaintiff has appealed.

The individual plaintiff-appellant is an unmarried woman residing in Utah and the mother of one child. When the suit was commenced she was pregnant, in her second trimester. She was receiving AFDC assistance (42 U.S.C. § 601) when she sought medical care. She consulted her doctor who determined that an abortion was a suitable treatment for this patient, and further concluded that an abortion was a medically necessary procedure in the circumstances.

The University of Utah Medical Center refused to admit the plaintiff for such an abortion on the ground that Utah statutes did not permit the use of public assistance funds for the purpose sought. The Utah statute in pertinent part is as follows:

"The department shall not provide any public assistance for medical, hospital or other medical expenditures or medical services to otherwise eligible persons where the purpose of such assistance is for the performance of an abortion, unless the life of the mother would be endangered if an abortion is not performed." Utah Code Ann. § 55–15a–3, 1953 (1979 Supp.).

There have been many recent cases in the trial and appellate courts which raise the issues presented by this appeal. The opinions and the literature generally have both become extensive. We hesitate to add more and propose to state only what is necessary to describe the conclusions reached and to so decide the case. We follow the analysis in *Doe v. Rose*, 499 F.2d 1112 (10th Cir.). We also have relied on *Reproductive Health Services v. Freeman*, 614 F.2d 585 (8th Cir.).

The position taken by the trial judge on the Constitutional issue was arrived at by his use of definitions of "therapeutic" and "non-therapeutic" procedures. His view essentially was that a non-therapeutic procedure was anything short of a lifesaving measure. Thus as to abortions, and under the statute of Utah, "unless the life of the mother would be endangered if an abortion is not performed," the procedure would be non-therapeutic, and "not necessary." The "not necessary" standard was apparently taken from *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464, wherein the Court in substance held that a state in its supervision and participation in the Medic-

aid program was not required to pay for medical procedures which were not necessary including non-therapeutic abortions.

The trial court also concluded that the State of Utah by the statute above quoted had defined therapeutic and non-therapeutic abortions or had determined what was medically necessary and what was not. This distinction was to override what a doctor might determine in an individual case.

We cannot agree with the trial court's definitions and its reading of the several Supreme Court cases. The *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, and *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201, rights were examined in *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464, and *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484, as they related to non-therapeutic abortions. The cases create a definite distinction between therapeutic and non-therapeutic abortions. This classification when applied to what is before us as a medically necessary procedure would seem to require us to equate medically necessary with therapeutic.

We also cannot agree that Utah by its life-threatening limitation made a valid distinction by giving weight to or consideration of the health of the woman only in life and death situations. It is apparent that short of the life endangering circumstances there are many other and different and serious conditions which have a direct bearing on what may be the proper medical solution. The severity and the interaction of these conditions must depend on the particular circumstances and on the particular person. The factors cannot be listed or defined by statute and cannot be anticipated. See the listing of possibilities in *Roe v. Wade* to be added to the basic medical problems.

In *Maher v. Roe* the Court said, "the central question in this case is whether the regulation 'impinges upon a fundamental right explicitly or implicitly protected by the Constitution.'" The Court there, of course, decided a large segment of the funding for abortions issue, but the portion here before us unfortunately was not included. Thus *Maher* decided the funding issue as to non-therapeutic abortions. It so decided that *Roe* did not declare an unqualified Constitutional right to an abortion, but instead decided that the right so declared "protects the woman from unduly burdensome interference with her freedom to decide whether to terminate her pregnancy." The interest of the woman was there weighed in the absence of considerations as to her health as that factor was not involved. The Court in *Maher*, as in *Roe*, described how the balance between the interest of the woman and the state changed as the pregnancy progressed, again, in the absence of other factors.

■ We are compelled to add to the *Roe* "rights" on the woman's side of the balance an additional weight. This is the condition of her health, and more particularly is that weight which exists when an abortion becomes a medical procedure necessary to preserve her health. This, in our view, pushes the reading well along the measure toward the standards applicable near the end of her term with the state's portion of the measure or interest thereby progressively reduced. How far this reduction of state interest may go we are not called upon to decide. However, in this appeal we do decide that as to plaintiff, in her second trimester, if the weight is not added, the plaintiff is subjected to an "unduly burdensome interference" as *Maher* describes it. On the other hand, if it is done, the right of this plaintiff on the measure is at a point where the degree of "fundamentalism" places it within that protection afforded a Constitutional right not to be explicitly or implicitly impinged upon. It may not be so impinged upon by the Utah statute here concerned. We so conclude after considering the direct and indirect interference doctrines described in *Maher*, and the explicit and implicit factors of *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491, if there is a difference. We notice when so considered, the Utah statute cannot survive either the compelling state interest test nor the rational test. The condition of the statute thus must be described as terminal.

The unduly burdensome interference was not present in *Maher* because the state could subsidize childbirth and did not need to subsidize a non-therapeutic abortion. There was, the Court there said, room for a value judgment by the state as to funding. The Court said:

"There is a basic difference between direct state interference with a protected activity and state encouragement of an alternative activity consonant with legislative policy."

There is no direct interference in the case before us in the sense of a criminal prohibition, but the state should not be able to make a value judgment to fund necessary medical procedures in all instances except when an abortion is the procedure found necessary. All distinctions between abortions and other procedures are, of course, not prohibited, but the one before us is a distinction applied to a particular condition or diagnosis, and not to all others. This is a distinction which has no relation to health care for which the funds are to be expended. It is difficult to see how this can be placed in a category of a "value judgment" by the state.

*Maher* speaks of the woman's freedom to *decide* to terminate her pregnancy. It is apparent that this decisional process necessarily includes a consideration of how, when, where, and with what medical and financial help the course decided upon would be implemented. It is more than just "deciding" as a theoretical matter. The interference by outside agencies on the factors going into the evaluation are thus of great significance. The interference to be unduly burdensome need not, of course, be absolute. But the Utah statute in its diversion of funds for necessary medical treatment from the plaintiff to those requesting funds for medical treatment related to childbirth does create an undue burden on plaintiff's decision to terminate her pregnancy.

■ Once Utah started down the road to provide health care for indigent persons it came within the Constitutional restrictions as to how it must be done. *Doe v. Rose*, 499 F.2d 1112 (10th Cir.). Medically necessary procedures cannot then be redefined to exclude treatment directed to a particular condition or treatments excluded that are necessary to meet a particular diagnosis.

It is hard to find a proper place for the rape and incest exceptions, and this is because they should not be there alone. They have been introduced into the state administered programs by Title XIX. They are not medical or health factors, but they are of great magnitude and present a very great tragedy. Obviously these are not the only tragedies which do occur in this context, but when they are listed as the exceptions they must be contrasted to the others. When this is done it becomes apparent that there exists a sound basis for the equal protection argument. .

REVERSED.