Rachel ROE et al., Plaintiffs,

v.

Joseph T. FERGUSON et al.,
Defendants.

Civ. A. No. 74–315.

United States District Court,
S. D. Ohio, E. D.

Sept. 16, 1974.

Robert Newman, Linda K. Champlin, Clyde Ellis, Ohio Civil Liberties Union, Columbus, Ohio, for plaintiffs.

William J. Brown, Atty. Gen., Thomas V. Martin, Shephen Ball, Asst. Attys. Gen., Columbus, Ohio, for defendants.

## OPINION AND ORDER

DUNCAN, District Judge.

This matter is before the Court on plaintiffs' motions for summary judgment against the defendants, Joseph Ferguson, Auditor of the State of Ohio, and Charles Bates, Director of the Ohio Department of Public Welfare. The plaintiffs in this case fall into four distinct categories. Plaintiff Roe and intervening plaintiffs Doe, Joe, Loe, Coe, Moe and Noe are all pregnant welfare recipients residing in the State of Ohio. All desire an abortion for one reason or another and none has the financial means of procuring one unless the abortions qualify under the physician-reimbursement provisions of the medicaid program administered by the State of Ohio. Each has consulted a physician and each examining physician has concurred in the abortion decision. Each of these plaintiffs has assumed a fictitious name for purposes of pursuing this litigation, a procedure which has been expressly approved by the Supreme Court. Roe v. Wade, 410 U.S. 113, 120–122, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The defendants have not opposed the respective motions for intervention and, seeing no way that such intervention would delay or prejudice the rights of the original parties to this action, the Court today grants these motions pursuant to F.R. Civ.P. 24(b).

The second category of plaintiffs in this case encompasses physicians Schwartz, Eichner and Hoffman. All three of these plaintiffs are obstetricians and gynecologists who are licensed to practice medicine in Ohio and who maintain offices for this purpose in Ohio. Each from time to time in the course of his medical practice and as a result of his independent medical judgment performs abortions for patients who are welfare recipients and who otherwise are in like circumstances with those plaintiffs in the first category described above. The plaintiff physicians allege that their right to practice medicine has been unlawfully constrained by the defendants.

The third category of plaintiffs herein consists of Women's Center, Inc. and Preterm-Cleveland. Both are medical clinics situated in Ohio which have licensed physicians practicing on their premises. Plaintiff Women's Center, Inc. says that it is suffering substantial economic losses because defendant Ferguson refuses to sign physician-reimbursement vouchers which have been presented by physicians working at plaintiff's facilities and which arose from abortions performed at those facilities. Women's Center, Inc. also alleges that the abortion services it offers face an imminent cut-back because its physicians will soon be forced to refuse abortions to medicaid recipients if a change in defendants' position regarding physician-reimbursement in abortion cases is not forthcoming. Plaintiff Preterm-Cleveland is in substantially the same position as Women's Center, Inc., except that Preterm-Cleveland has already cut back on the abortion services it offers low income patients because of defendants' policies.

The fourth and final category of plaintiffs herein is comprised solely of NOW, Inc. (National Organization for Women), an organization with Ohio offices which promotes the advancement of women's rights on varied fronts. NOW, Inc. asserts the rights of its low-income members who are adversely affected by the policies of defendants and by the challenged Ohio statute.

In their memoranda opposing plaintiffs' motions for summary judgment, neither of the defendants has asserted that summary judgment is not a proper vehicle for disposition of this case. The Court has the benefit of the pleadings and memoranda of the parties as well as various affidavits filed on plaintiffs' be-

half. The questions presented herein are questions of law, not questions of fact, making the Rule 56 device peculiarly appropriate in this case.

At the outset it is appropriate to note what is *not* before the Court for decision today. Difficult questions concerning the clash between the rights of women to obtain abortions and the power of states to prohibit abortions have been addressed and resolved by the Supreme Court. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 755, 35 L.Ed.2d 147 (1973). These decisions are binding upon this Court, and the parties to this action do not seek to re-litigate these questions here.[1]

Defendant Ferguson has announced and followed a policy of treating physician-reimbursement vouchers involving abortions differently from other vouchers arising from the Ohio medicaid program. Pursuant to R.C. 115.35, Ferguson in his official capacity as Auditor of the State of Ohio receives such vouchers; only he is authorized to issue warrants upon the state treasury for the payment of such vouchers. On February 21, 1974, Ferguson as Auditor of the State of Ohio wrote defendant Bates as Director of the Ohio Department of Public Welfare and informed him that Ferguson would not sign warrants for any vouchers pertaining to "any Elective Abortion bills." The letter in its entirety is set out in the margin[2]; Ferguson did not define what he meant by an "elective" abortion. This policy was reiterated in a letter from Ferguson to Bates dated May 30, 1974; this letter is also set out in the margin.[3] In

1. In this same vein, a three-judge court has observed:

> It must be noted that in dealing with the issues in this case we are precluded from the treatment of abortion on moral grounds, nor are we dealing with abortion in its criminal aspects. We must follow the course which recognizes that the law does not represent itself as a moral code, but rather, as a body of rules wherein the majority of the people impose their will, and, within constitutional limits, invade the freedom of the individual, in the interest of public health and welfare. Whatever may be the private view of an individual or group of individuals, or the members of this Court, we are bound by the now established principle of law that a negation of an individual's choice in the matter of abortion during the first trimester of pregnancy is an unwarranted invasion of that person's fundamental rights as established by the Fourteenth Amendment to the Constitution of the United States.

Doe v. Wohlgemuth, 376 F.Supp. 173, 179 (W.D.Pa.1974).

2. The text of the letter follows:

> Dear Mr. Bates:
>
> You are hereby notified that the Auditor of State will not pay any Elective Abortion bills from physicians. If you continue to submit for payment Elective Abortion bills along with other Medicaid billings, it will be necessary for the Auditor to have at least 5 days lead time prior to the payment date to interrogate all billings and isolate these particular invoices.

> In order to be able to pay the Medical Assistance billings in an orderly fashion, it would be best for your department to separate the Abortion invoices and process them separately. Your refusal to separate these particular billings could result in a delay in payments of entire runs.
>
> Very truly yours,
> Joseph T. Ferguson
> AUDITOR OF STATE

3. The text of the letter follows:

> Dear Mr. Bates:
>
> This letter will serve to notify you that the Auditor of State will process Abortion bills for payment according to the following policy set down by this office.
>
> CPT Codes 59800, 59801, 59810, 59811, 59820 and 59830 will be paid if they are performed in a hospital setting. Under the present policy, no payment will be made for Abortions performed in a group cline setting or physician's office.
>
> CPT Codes 59850 and 59860 will be rejected and returned to the Ohio Department of Public Welfare requesting a signed statement from the physician as to the reason or necessity of this procedure.
>
> Ancillary charge, such as hospital fees, lab fees, anesthesia fees and drug fees which can be directly associated with these two Codes will, also, be rejected and matched as to recipient by the Welfare Department with the physician's invoice and resubmitted along with the physician's explanation for performing this procedure.
>
> At the present time there are, also, three other Codes in the system which pertain

the second letter, Ferguson stated that certain voucher codes relating to elective abortions "will *not* be paid under any circumstances." (Emphasis in original.)

Plaintiffs challenge not only these administrative rulings of Ferguson but also the newly-enacted R.C. 5101.55(C), which provides as follows:

> State or local public funds shall not be used to subsidize an abortion, unless the abortion is necessary to preserve the life or physical or mental health of the pregnant woman and this fact is certified in writing by the performing physician to the state or local agency providing the funds.

This statute, having been signed into law on June 17, 1974, is to take effect under the laws of Ohio on September 16, 1974; one of defendant Bates' statutory duties is to see that the Ohio Department of Public Welfare is administered in conformity with this and other Ohio statutes.

Plaintiffs bring this action pursuant to 42 U.S.C. Section 1983 and 28 U.S.C. Sections 2201 and 2202. They assert that this Court has jurisdiction pursuant to 28 U.S.C. § 1343(3). The administrative rulings of Ferguson and the Ohio statute, R.C. 5101.55(C), are attacked on two fronts, as violative of plaintiffs' statutory rights under the Social Security Act, 42 U.S.C. Section 1396a et seq. and as violative of their rights under the due process and equal protection clauses of the Fourteenth Amendment.

In Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the Supreme Court considered the very jurisdictional question which is presented in the instant case. The plaintiffs in *Hagans* challenged a New York regulation which permitted the state to recoup prior unscheduled payments for rent from subsequent grants under the federal-state Aid to Families with Dependent Children (AFDC) program. The district court found that the equal protection claim asserted by the plaintiffs was substantial and provided a basis for pendent jurisdiction to adjudicate their claim that the state regulation did not comport with the Social Security Act and the relevant HEW regulations pertaining thereto. The Supreme Court held, 415 U.S. at 533, 94 S.Ct. 1372, that the district court had jurisdiction under 28 U.S.C. Section 1343 (3) to consider the attack on the regulation. The Supreme Court made it clear that the sole threshold question for determining whether a district court has jurisdiction in a case such as this is whether the constitutional claim asserted is "substantial." I therefore turn immediately to the question of the substantiality of the plaintiffs' claim under the Fourteenth Amendment.

■ Plaintiffs correctly observe that, following the decisions in Roe v. Wade and Doe v. Bolton, *supra,* the State of Ohio may not, via its criminal laws or otherwise, expressly prohibit those persons who comprise the first category of plaintiffs in this case from procuring abortions. Defendants, while conceding this, argue that the challenged statute and administrative rulings do not *prohibit* these plaintiffs from procuring abortions, but simply evidence Ohio's policy against *subsidizing* abortions. In so arguing, defendants raise a point of dubious constitutional significance. Plaintiffs do not argue that there is a constitutional right to free abortions; they argue that a statute which provides funds to the needy for medical expenses

---

to *Elective Abortions* in the first, second and any trimester. The Codes are 59870, 59880 and 59890. These Codes will *not* be paid under any circumstances.

Any invoice which has a ICDA code in the 640.0 series must, also, have a CPT Code or a diagnosis. If this is not on the Invoice it will be rejected and returned to the Welfare Department for correction.

This policy will be followed until such a time as new Guidelines are set forth to comply with H.B. 989.

Sincerely yours,
JOSEPH T. FERGUSON
Auditor of State

encounters constitutional difficulities if it is construed to weight the choice of the pregnant indigent against electing the abortion which she has a constitutional right to choose. Laying aside for the moment plaintiffs' contention that to refuse to "subsidize" abortions for these low-income plaintiffs is, in effect, to prohibit them from securing such operations, there exists a long line of authority for the proposition that a state, while under no duty to provide financial assistance for indigents, must do so within constitutional limitations once it enters the field. See, *e. g.*, Memorial Hospital v. Maricopa County, 415 U.S. 250 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The Court notes that the distinctions which the administrative rulings and the statute challenged in this case make between elective and non-elective abortions and between abortions performed for the health and safety of the mother and those performed for other reasons appear to find no support in the Supreme Court's decisions in Roe v. Wade and Doe v. Bolton, *supra.* Further, as to the relative substantiality or insubstantiality of the constitutional claim asserted herein, the Court notes that the Supreme Court in Roe v. Wade found that the mother's right to abortion may only be overridden by a compelling state interest. 410 U.S. at 162–163, 93 S.Ct. 705. For these reasons, I find that the plaintiffs have presented a substantial constitutional claim. See Doe v. Rose, 499 F.2d 1112 (10th Cir. 1974); Roe v. Norton, 380 F.Supp. 726 (D.Conn. 1974); Doe v. Wohlgemuth, 376 F.Supp. 173 (W.D.Pa.1974).

■ Having found such a claim in this case, I am again guided by the Supreme Court's opinion in *Hagans, supra,* where the Court observed:

Given a constitutional question over which the District Court had jurisdiction, it also had jurisdiction over the 'statutory' claim. The latter was to be decided first and the former not reached if the statutory claim was dispositive.

415 U.S. at 543, 94 S.Ct. at 1382 (citations omitted). I turn, therefore, to plaintiffs' contention that the challenged statute and administrative rulings do not comport with the terms of the Social Security Act.

The defendants' position as to this question is summarized at paragraph twenty-four defendant Ferguson's answer:

In order to qualify for funding under the federal statute, a state must adopt a plan which complies with certain requirements specified in the statute. The federal statute, however, gives the states great latitude in establishing standards for the administration of their plans. There is no requirement in the federal statute which requires a state to pay the costs of services which are not medically necessary.

The precise language of the federal statute appropriating medicaid monies to states which have adopted programs which are in compliance with the Social Security Act is that the appropriation is for the purpose of enabling each state to furnish

medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of *necessary medical services* . . . .

42 U.S.C. Section 1396 (emphasis supplied). This language does not appear in the mandatory guidelines for state medicaid programs, 42 U.S.C. Section 1396a(a)(10)(A) (emphasis supplied):

A state plan for medical assistance *must* . . . provide . . . for making *medical assistance available to all individuals* receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, or with respect to whom supplemental security income benefits are being paid under subchapter XVI of this chapter.

Although this language does not include the "necessary medical services" lan-

guage found in the appropriating section quoted above, the same "necessary medical services" language does appear immediately below the quoted 42 U.S.C. Section 1396a(a)(10)(A), in 42 U.S.C. Section 1396a(a)(10)(C)(i), where the statutory language pertains to the eligibility of persons not otherwise on welfare but who do lack the "income and resources to meet the costs of necessary medical and remedial care and services."

Although Section 1396(a)(10)(A) does not expressly evidence a congressional intent to require participating states to make only "necessary medical services" available in their medical assistance programs, this Court is, in light of the other quoted sections and upon a common sense approach to the question of congressional intent, willing to read this criterion into the section. This does not resolve the question at hand, however, but rather requires a determination whether "elective" abortions, to use defendant Ferguson's undefined term, or abortions performed for reasons other than the health and safety of the mother, to use the language of R.C. 5101.55(C), are "necessary medical services" within the meaning of the Social Security Act.

■ The defendants nowhere argue, and, indeed, they would be hard-pressed to argue, that the medical services required by a pregnant woman who decides to carry her child to term are not "necessary." The Court is of the opinion that such full-term medical expenses are necessary within the meaning of the Act. The medical expenses of a pregnant indigent must therefore become unnecessary under defendants' analysis upon her deciding in consultation with her physician to obtain an abortion. The logic of an argument which would have the Court hold pregnancy expenses necessary so long as the woman chooses to have the child and unnecessary the moment she decides to have an abortion completely escapes me. The condition which is necessary of treatment is the pregnancy. Whether the patient and her physician elect abortion or full-term pregnancy has nothing more to do with the necessity of medical services than whether a cancer patient and his physician elect surgery or cobalt treatments.

■■ Thus, the construction which defendants would have this Court give 42 U.S.C. Section 1396a(a)(10)(A) pertains not to whether certain alternative pregnancy *services* are necessary but rather to whether the *decision* to have an abortion is necessary. This construction not only flies in the face of the protection which the Social Security Act normally affords the physician-patient relationship, but also gives rise to the same kinds of substantial constitutional questions discussed in another context earlier in this opinion. The Court, being unwilling to give the statute a construction which immediately gives rise to grave constitutional difficulties, concludes that the Social Security Act does not permit states participating in the medicaid program to distinguish abortion expenses from all other medical expenses.[4]

■ The Court having concluded that the challenged state statute and administrative rulings are not in conformity with the mandatory provisions of 42 U.S.C. Section 1396a, judgment will be entered accordingly.[5]

4. This result is supported, apparently, by the Department of Health, Education and Welfare (HEW), which is charged with administering the Social Security Act. In Roe v. Norton, *supra*, the Court stated:

[HEW] has expressed its views in this litigation that the Medicaid provisions do not exclude any abortions. In a letter to plaintiffs' counsel, the associate commissioner of the HEW's Social and Rehabilitation Service stated that "under Title XIX, federal financial participation is available for any abortions for which the state welfare agency provides payment." The district court in Roe v. Norton resolved issues identical to those presented in the instant case in substantially the same manner as this Court does today.

5. Since the Court resolves the issues presented on the statutory grounds, the Supremacy Clause and Fourteenth Amendment issues are not reached, thereby obviating the

## ORDER

For the reasons set forth in the Memorandum accompanying this Order, it is

Ordered that the motions to intervene of Doe, Joe, Loe, Coe, Moe and Noe be and hereby are granted; it is further

Ordered, adjudged and decreed that R.C. 5101.55(C) and the administrative rulings of defendant Ferguson as evidenced by his letters to defendant Bates under dates of February 21, 1974, and May 30, 1974, are in contravention of the mandatory provisions of 42 U.S.C. Section 1396a and that said statute and rulings are therefore void and of no effect insofar as these are applicable to federal-state medicaid monies; and it is further

Ordered that the defendants Joseph Ferguson and Charles Bates be and hereby are enjoined from enforcing said statute and rulings insofar as these are applicable to federal-state medicaid monies and are further enjoined from treating in any manner inconsistent with this Opinion and Order vouchers and warrants in the Ohio medicaid program which arise from abortions.

need for a three-judge court, 28 U.S.C. Section 2281. See Hagans v. Lavine, *supra*;

Doe v. Rampton, 497 F.2d 1032, 1035 (10th Cir. 1974).