Carol COE et al.

v.

Thomas HOOKER et al.

Rebecca ROE et al.

v.

Thomas HOOKER et al.

Wanda WOE et al.

v.

Thomas HOOKER et al.

Civ. A. Nos. 75–206, 75–244 and 75–253.

United States District Court, D. New Hampshire.

Jan. 8, 1976.

Mary Susan Galway, Orr & Reno, Concord, N. H., Barbara Sard, N. H. Legal Assistance, Manchester, N. H., for plaintiffs.

Richard V. Wiebusch, G. Wells Anderson, Hall, Morse, Gallagher & Anderson, Concord, N. H., for defendants.

## MEMORANDUM OPINION

BOWNES, District Judge.

This is an action for a declaratory judgment and injunctive relief alleging infringement of plaintiffs' civil rights guaranteed by both the statutes and the Constitution of the United States. It is brought under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 with jurisdiction conferred by 28 U.S.C. § 1343.

Plaintiffs challenge the New Hampshire Medicaid regulation which excludes as a reimbursable medical service all "medically unnecessary" abortions.

Effective July 18, 1975, the New Hampshire Division of Welfare will make payment for surgical, obstetrical and medical services (in or out of hospital) excluding payment for surgical, obstetrical and medical service procedures to terminate pregnancy except (1) when performed in conformity with New Hampshire law then in effect, and (2) when medically necessary to preserve the life or health of the mother or fetus.

Plaintiffs claim that this regulation violates Title XIX of the federal Social Security law, 42 U.S.C. § 1396 *et seq.,* and that it abridges their constitutional rights to privacy and the equal protection and benefit of the laws. U.S.Const. amend. IX and XIV. Defendants argue that New Hampshire is allowed great latitude in determining the extent of medical coverage it will provide, and that it may refuse, under Title XIX and

the Constitution, to finance "medically unnecessary" abortions for plaintiffs.[1]

Plaintiffs' original complaint was filed on July 15, 1975, and alleged only infringement of plaintiffs' constitutional rights. Accordingly, a Three-Judge Court was convened pursuant to 28 U.S.C. § 2281. At argument on September 22, 1975, the issue was raised as to whether defendants' regulation violates controlling federal law, Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq. See, Doe v. Beal,* 523 F.2d 611 (3rd Cir., 1975), *petition for cert. filed,* 44 U.S.L.W. 3287 (U.S. 11/11/75) (N. 75–554).

 The statutory issue is solely within the jurisdiction of this court under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Because plaintiffs' constitutional claim is plainly not insubstantial, this court also has pendent jurisdiction over plaintiffs' statutory claim. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Rosado v. Wyman,* 397 U.S. 397, 402–403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). *See, Roe v. Norton,* 522 F.2d 928 (2d Cir., 1975); *Doe v. Rose,* 499 F.2d 1112 (10th Cir., 1974). Because the statutory claim must be decided before the constitutional question can be reached, the Three-Judge Court on December 10, 1970, remanded the case back to this single district judge for consideration of the statutory question. *Westby v. Doe,* 420 U.S. 968, 95 S.Ct. 1385, 43 L.Ed.2d 648 (1975); *Hagans v. Lavine, supra,* 415 U.S. at 536, 94 S.Ct. 1372; *Dandridge v. Williams,* 397 U.S. 471, 475–476, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Rosado v. Wyman, supra,* 397 U.S. at 402, 90 S.Ct. 1207. The Three-Judge Court has retained jurisdiction over the constitutional claims. Both parties have moved for summary judgment.

The parties agree that the Medicaid program leaves to the states' discretion the content of the services composing medical assistance. Plaintiffs contend that defendants' exclusion of elective abortions as an eligible medical expense violates Title XIX's reasonableness and equality standards. I find plaintiffs' statutory claim dispositive and do not reach the constitutional issues.

FACTS

The following facts are taken from either the stipulations or the affidavits submitted by the parties.[2] New Hampshire participates in the Medical Assistance Program under Title XIX of the Social Security Act of 1935, 42 U.S.C. § 1396 *et seq.;* NH RSA 161:2 VIII (1964); NH RSA 167:6 VII (Supp.1975). New Hampshire administers medical assistance to both the "categorically needy" and the "medically needy" through the Division of Welfare of the Department of Health and Welfare. NH RSA 167:6 VII; 45 C.F.R. 248.-10(a)(1), (2).

Defendant Whaland is the New Hampshire Commissioner of Health and Welfare and is responsible for the overall administration of the New Hampshire Department of Health and Welfare. Defendant Hooker is the former director of the New Hampshire Division of Welfare, a part of the Department of Health and Welfare. He was responsible for the overall administration of the Medicaid program in New Hampshire. Defendant Kaschub, Director of Medical Services, Division of Welfare, is immediately

---

1. Defendants, in their brief, explain their usage of the term "medically necessary abortions." They refer specifically to abortion procedures which are "medically necessary to preserve the life or health of the mother or fetus, and should not be confused with the terms 'non-elective' or 'therapeutic' abortion, . . ." (Defts.' Supplemental Brief at p. 1.) Defendants claim that their standard is a "medical standard of necessity" and that they seek to exclude reimbursement for only *purely* elective abortions. I do not find defendants' differentiation between therapeutic and medically necessary abortions useful, and, in this memorandum opinion, I use the terms interchangeably.

2. The stipulated facts are not cited by paragraph unless they are quoted in the text of this opinion. All facts concerning plaintiffs Smith and Boe are taken from their affidavits because they intervened in this action after counsel had filed the stipulations of fact.

accountable for the administration of the New Hampshire Medicaid program.

Plaintiffs Woe, Poe, Roe, Smith and Boe are or were residents of the State of New Hampshire at the time their complaints were filed. They have all assumed fictitious names for the purposes of this suit because they wish to assure their anonymity during the course of this litigation. They are indigent recipients of Aid to Families with Dependent Children (AFDC) and are eligible for medical assistance within the New Hampshire Medicaid program.

Prior to commencing or entering this litigation, but after July 18, 1975, plaintiffs Woe, Poe, Roe, Smith and Boe were each diagnosed as pregnant by a qualified physician. All were within the first trimester of pregnancy. Each plaintiff decided in consultation with her physician to terminate her pregnancy. In each case, the physician advised plaintiff that her abortion was not "medically necessary" in that it was not "necessary to preserve the life or health of the mother or fetus." None of the plaintiffs had sufficient means to pay for an abortion, but each was eligible for Medicaid assistance at the time.

Plaintiffs gave a variety of reasons for desiring to terminate their pregnancies. Each plaintiff had at least one child; several had more. All stated that they were not sufficiently stable, either economically or emotionally, to adequately rear an additional child. Affidavits Woe, Poe, Roe, Smith and Boe.

Plaintiff Dr. Kenneth McKinney is a physician licensed to practice medicine in New Hampshire. As a part of his medical practice, Dr. McKinney performs first and second trimester abortions for his patients. By affidavit he has expressed his willingness to perform such abortions for Medicaid patients if he could receive Medicaid reimbursement for these medical services.

In 1973, the New Hampshire Attorney General announced that the United States Supreme Court decisions, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), voided all New Hampshire criminal statutes concerning abortion. Therefore, abortion is a legal medical service under state law in New Hampshire. Until July 18, 1975, New Hampshire's Medicaid Manual included abortion as a reimbursable medical service as both a family planning service and a physician's service. Defendant Hooker, pursuant to NH RSA 161:4 I (Supp.1975),[3] with the approval of defendant Whaland promulgated the contested regulation, effective July 18, 1975. New Hampshire's regulations have at all times relevant to this suit "provided for Medicaid benefits for full-term deliveries and other pregnancy related medical care." Stipulations of Fact ¶ 7 at 2.

Plaintiffs Woe, Poe, Roe, Smith and Boe were all informed by their physicians that, because they did not medically require an abortion, the abortion would be a nonreimbursable medical service; therefore, their Medicaid cards could not be used to pay for the costs of the abortion. Affidavits Poe, Woe, Roe, Smith and Boe. Plaintiffs then commenced a constitutional attack on defendants' regulation and each pregnant plaintiff obtained a temporary restraining order from this court directing defendants to provide Medicaid reimbursement for the abortion of each plaintiff.

### THE FEDERAL STATUTE

The Medicaid program was established in 1965 by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* It is designed to enable participating states through federal grants-in-aid to provide indigents with medical assistance. 42 U.S.C. § 1396. The program is jointly

---

**3.** I. SUPERVISION; REGULATIONS. It shall be the duty of the director of the division of welfare within the department of health and welfare to supervise and direct the division so that its duties herein defined be effectuated, and to make such rules and regulations, subject to the approval of the commissioner, and take action necessary or desirable to carry out the provisions of this chapter or RSA 167. . . . .

funded by the state and federal governments and is locally administered.

■ While a state has the option of participating in the Medicaid program, once it does so, it is bound to conform to federal law. *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974); *Rosado v. Wyman, supra,* 397 U.S. 397, 90 S.Ct. 1207; *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Further, participating states must submit their plans for medical assistance to the Department of Health, Education and Welfare (HEW) for approval. *See,* 42 U.S.C. § 1396a(b).

■ The Medicaid program represents a "scheme of cooperative-federalism," *King v. Smith, supra,* 392 U.S. at 316, 88 S.Ct. 2128, in which the states have considerable freedom in designing their own plans. Nevertheless, the statute does outline basic provisions which the states must follow. First, states are required to furnish medical assistance to the "categorically needy." 42 U.S.C. § 1396a(a)(10)(A); 45 C.F.R. 248.10(b)(1). Second, states must provide to the "categorically needy" five mandatory types of medical services. 42 U.S.C. § 1396a(a)(13)(B); 45 C.F.R. 249.10(a)(1). The five services are: The five services are:

> (1) inpatient hospital services . . . ;
>
> (2) outpatient hospital services;
>
> (3) other laboratory and X-ray services;
>
> (4)(A) skilled nursing facility services . . . (B) . . . early and periodic screening and diagnosis . . . (C) family planning services and supplies . . . ;
>
> (5) physicians' services furnished by a physician . . . ;
>
> 42 U.S.C. § 1396d(a)(1)–(5).

Section 1396a sets out other minimal requirements which relate to the standards and quality of medical care and services to be provided and outline required procedures designed to protect Medicaid recipients and the program.

Title XIX does not further specify or limit the type or extent of medical assistance which the states must furnish eligible persons. Nowhere in the statute is there included any reference to a specific medical treatment or procedure.[4] Neither pregnancy, as a condition requiring medical attention, nor abortion, as a medical procedure or treatment, is specifically mentioned.

■ The latitude given the states allows each one to develop a Medicaid program "as far as practicable under the conditions in such State." 42 U.S.C. § 1396. To further this goal, Title XIX broadly defines "medical assistance." In addition to the five required services, twelve optional categories of medical, care or services are considered "medical assistance" and may be included in the state program. 42 U.S.C. § 1396d(a). HEW has stated that it will share with the states the costs of any medical service offered in the state program so long as the service comes within any of the seventeen enumerated categories of medical care. *Doe v. Wohlgemuth,* 376 F.Supp. 173, 179 n. 5 (W.D.Pa.1974), *modified sub nom., Doe v. Beal, supra,* 523 F.2d 611. The Congressional purpose to promote state tailored programs is exemplified by Section 1396d(a)(6) which allows a state to include any

> medical care, or any other type of remedial care recognized under State law, furnished by licensed practitioners within the scope of their practice as defined by State law; . . . .

Although Title XIX encourages states to develop Medicaid programs consonant with their own needs, it does place limits on the design and administration of these programs. First, the extent of

---

**4.** This court notes, however, that Congress has given particular attention to several conditions that require medical attention, *e. g.,* tuberculosis, *see,* 45 C.F.R. 249.10(a)(6)(ii) and 45 C.F.R. 249.10(b)(1), and mental illness, *see,* 42 U.S.C. § 1396a(a)(20), (21) and 45 C.F.R. 249.10(a)(6)(ii) and 45 C.F.R. 249.10(b)(1). As concerns these conditions, the states are granted greater leeway in developing their Medicaid programs.

medical services covered must be determined by

> reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this [Act], . . . . 42 U.S.C. § 1396a(a)(17).

Second, Section 1396a(a)(10)(B)(i) essentially mandates equal treatment and coverage of the "categorically needy" receiving medical benefits. Finally, the states are forbidden from arbitrarily denying Medicaid benefits to an eligible individual. 45 C.F.R. 249.10(a)(5)(i).

■ These statutory limitations, especially the equality and the arbitrary denial provisions are essentially the same as constitutional guarantees. Medicaid recipients are thus statutorily guaranteed equal protection and due process of the law.

## STANDING

■ Plaintiffs have standing to bring this suit. There is no question that plaintiffs Woe, Poe, Roe, Smith and Boe are "categorically needy." 42 U.S.C. § 1396a(a)(10); 45 C.F.R. 248.10(a)(1). They are, therefore, eligible for the mandatory services, including physicians' services and family planning services, both of which could include abortion services. 42 U.S.C. § 1396d(a)(4), (5); see, 45 C.F.R. 249.10(b)(5). Plaintiffs were pregnant at the time they commenced this litigation and, as the Supreme Court noted, pregnancy is a recurring condition. *Roe v. Wade, supra,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147. Plaintiffs have a "personal stake in the outcome of [this] controversy," *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), and the termination of their pregnancies does not moot this case. *Roe v. Wade, supra,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147; *Roe v. Ferguson,* 515 F.2d 279 (6th Cir., 1975).

■ Plaintiff McKinney, as a physician whose practice is economically affected by defendants' regulation, also has standing to bring this suit. *Doe v.*

*Bolton, supra,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201; *Roe v. Ferguson, supra,* 515 F.2d 279; *Nyberg v. City of Virginia,* 495 F.2d 1342 (8th Cir.), *cert. denied,* 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974).

## REASONABLENESS

The issue is whether defendants exercised "reasonable standards" "consistent with the objectives of" Medicaid as required by Section 1396a(a)(17) in excluding elective abortions from Medicaid coverage. Prior to July 18, 1975, defendants represented in the New Hampshire Medical Assistance Manual that abortions were a reimbursable medical expense as both a family planning service and as a physician's service. Stipulations of Fact ¶ 15 at 4. Both of these services are required services for the "categorically needy." 42 U.S.C. § 1396a(a)(13)(B); 42 U.S.C. § 1396d(a)(4), (5). Since July 18, 1975, defendants have refused to treat abortions that were not "necessary to preserve the life or health of the mother or fetus" as reimbursable medical expenses under either of these categories. Plaintiffs complain that defendants have unreasonably restricted the extent of medical assistance available to eligible pregnant women. I agree.

New Hampshire offers medical assistance for "full-term deliveries and other pregnancy related medical care." Stipulations of Fact ¶ 7 at 2. It refuses to reimburse the costs of only nontherapeutic abortions. There is no dispute that some medical service is necessary for the treatment of pregnancy, and defendants agree that the full-term birth of a child "may impose a greater risk of physical harm to a woman than an abortion performed during the first trimester of pregnancy." Stipulations of Fact ¶ 14 at 4. *Roe v. Wade, supra,* 410 U.S. at 149, 93 S.Ct. 705.

Defendants do not argue that the contested regulation is "reasonable"; instead, they contend that an elective abortion is "not necessary" in the sense that it is not medically required to pre-

serve the life or health of the mother and that New Hampshire can, consistent with federal law, pay only for "necessary" medical services.

■ This case does not directly raise the issue of whether or not Title XIX forbids Medicaid reimbursement for elective abortions, *see, Roe v. Norton,* 380 F.Supp. 726 (D.Conn.1974), *rev'd, Roe v. Norton, supra,* 522 F.2d 928, but I find that, as a preliminary matter, there is no indication in Title XIX that the states are limited to reimbursing only "necessary medical expenses." The phrase "necessary medical services" is used in the statute to modify eligible individuals. 42 U.S.C. § 1396; 42 U.S.C. § 1396a(a)(10)(C)(i). *Roe v. Norton, supra,* 522 F.2d at 933. There is no mandatory requirement on the states that Medicaid benefits be limited to only "necessary medical services."

If the states themselves impose such a requirement, they may not, as defendants assume, categorically decide without reasonable justification that a specific treatment is "unnecessary." Defendants have not shown that New Hampshire's denial of Medicaid reimbursement for nontherapeutic abortions is either reasonable or consistent with the objectives of the program.

■ One objective of the Medicaid program is to provide medical services in "the best interests of the recipients." 42 U.S.C. § 1396a(a)(19). Defendants agree that a first trimester abortion is often safer for a woman than full-term birth. *See, Roe v. Wade, supra,* 410 U.S. at 149, 93 S.Ct. 705; *Doe v. Beal, supra,* 523 F.2d at 622. The woman, along with her physician, is in the best position to decide which treatment is in her best interests, and defendants can hardly claim a superior basis for making that determination. The United States Supreme Court in *Wade* discussed some factors to be considered in the abortion decision that would be known only to the persons directly involved.

Specific and direct harm medically diagnosable even in early pregnancy may be involved. Maternity, or additional offspring, may force upon the woman a distressful life and future. Psychological harm may be imminent. Mental and physical health may be taxed by child care. There is also the distress, for all concerned, associated with the unwanted child, and there is the problem of bringing a child into a family already unable, psychologically and otherwise, to care for it. In other cases, as in this one, the additional difficulties and continuing stigma of unwed motherhood may be involved. All these are factors the woman and her responsible physician necessarily will consider in consultation. 410 U.S. at 153, 93 S.Ct. at 727.

It is apparent that the woman and her physician are in the best position to assess these possible harms and to decide upon a treatment best suited for the woman involved. A unilateral decision on the part of the state that elective abortions are "unnecessary" ignores the statutory mandate of Section 1396a(a)(19) that medical services are to be offered in "the best interests of the recipients."

■ A second objective of the program, economy, does not justify defendants' regulation. 42 U.S.C. § 1396a(a) (30). Defendants acknowledge that pregnancy is a condition which requires medical treatment. *See,* Stipulations of Fact ¶ 7 at 2. It is generally agreed that the costs of a first trimester abortion are less than the costs of prenatal, delivery and postpartum medical services. *Doe v. Beal, supra,* 523 F.2d at 622. *Doe v. Rose, supra,* 499 F.2d at 1117 citing *Klein v. Nassau County Medical Center,* 347 F. Supp. 496, 501 (E.D.N.Y.1972), *vacated* and *remanded* in light of *Roe v. Wade,* 412 U.S. 925, 93 S.Ct. 2747, 2748, 37 L.Ed.2d 152 (1975). Defendants are not conserving Medicaid funds by refusing to reimburse recipients for elective abortions while offering to pay for the alternative more expensive medical services.

■ Defendants have offered no examples of other medical situations where the State restricts the choice of treatment available to a patient or where the State limits the availability of

a specific treatment to a life or health endangering situation. The choice of treatment and factors a physician may consider in determining treatment are left open to the physician and the patient. The Medicaid statute is designed to afford physicians broad discretion in the care of their Medicaid patients. *Doe v. Beal, supra*, 523 F.2d at 618. *Roe v. Ferguson*, 389 F.Supp. 387 (S.D.Ohio 1974), *rev'd* and *remanded, supra*, 515 F.2d 279; *Roe v. Norton, supra*, 380 F.Supp. 726. To allow the states to limit a physician in the exercise of his or her medical judgment would be inconsistent with the intent of Congress

> to place the primary authority for determining what treatment a particular recipient requires in the hands of the attending physician. *Doe v. Beal, supra*, 523 F.2d at 618.

Other courts considering the issue of Medicaid abortions found that the Medicaid statute does not permit state interference with the exercise of a physician's medical judgment.

> The doctors were acting well within their field of expertise in concluding that in neither case did the plaintiff's physical or psychiatric health require an abortion as an alternative to childbirth. But whether that circumstance excludes these abortions from the coverage of a federal statute is a question of law, not of medicine.
>
> There is nothing in the text or legislative history of the statute to suggest that when a patient's condition requires medical attention, each alternative form of medical service that might be rendered must be deemed to be necessary to qualify for federal reimbursement. Such a notion would be contrary to the basic philosophy of both the Medicare and Medicaid provisions, which emphasizes the wide discretion to be accorded physicians in treating their patients. . . . [W]hen a patient's condition does re-

quire some medical attention, the choice of service to be rendered should normally be a matter between doctor and patient, and the service they select is eligible for payment, so long as it is an accepted medical procedure, and does not involve costs that are excessive compared to adequate alternatives. *Roe v. Norton, supra*, 380 F.Supp. at 729.

Although the Second Circuit reversed the *Norton* decision, it explicitly affirmed the district court on this particular point.

> Pregnancy is plainly a physical condition which requires medical attention. The nature of the services to be rendered is a matter between patient and doctor. If the woman carries the pregnancy to term, such services will normally include prenatal care, obstetrical services and post-partum care. If, on the other hand, the woman elects to terminate her pregnancy by having an abortion permitted by law (in the first trimester, or otherwise), the medical services required are those in performing the abortion and in appropriate care thereafter. The care and services rendered in either of these circumstances would be equally "necessary" if such a showing were required by Title XIX. *Roe v. Norton, supra*, 522 F.2d at 934.

*Accord, Klein v. Nassau County Medical Center, supra*, 347 F.Supp. at 500. The clear implication from these cases is that the Medicaid statute leaves the decision as to the treatment for pregnancy to the physician and the patient, and the State may not interfere in that decision without at least reasonable justification.[5]

▮▮▮▮ I find that an elective abortion can be a "necessary medical service." The fact that women in the early stages of pregnancy can choose between alternative methods of treatment, neither of which will greatly endanger their lives or physical health, does not make

---

**5.** This court notes that the Supreme Court explicitly left the choice of pregnancy treatment to the best judgment of the physician and the patient. *Roe v. Wade, supra*, 410 U.S. at 163, 93 S.Ct. 705; *Doe v. Bolton, supra*, 410 U.S. at 192, 93 S.Ct. 739.

either alternative less necessary than the other. Defendants infer from the fact of the choice that one of the options is not "necessary." It is the voluntary character of the choice at the time that it is made that defendants use to differentiate elective abortions from other medical procedures. However, the election is not as free as defendants assert. Once pregnant, a woman is in need of medical treatment, and she must choose one service or another. She is not acting out of whim; she is choosing, in her own best interests, between alternative methods of treatment for a condition which defendants recognize places her in need of medical attention. Nontherapeutic abortions are no less necessary than other methods of treatment of pregnancy merely because a woman has the option of carrying her pregnancy to full-term, an alternative which defendants find preferable.

Pregnancy is a condition which in today's society is universally treated as requiring medical care, prenatal, obstetrical and post-partum care, and undeniably it is provided under the Medicaid program as "necessary" medical assistance although pregnancy is not an abnormal condition, nor does the medical assistance in child birth "cure" it. Medical assistance for abortion is not less "necessary" because an election to bear the child would obviate that medical assistance and require instead other, more extensive and more expensive medical assistance. The pregnant woman may not be denied necessary medical assistance because she has made an unwarrantedly disfavored choice, and no other basis appears here for denying medical assistance. *Klein v. Nassau County Medical Center, supra,* 347 F.Supp. at 500.

 The State, in eliminating elective abortions as a reimbursable method of treatment for the condition of pregnancy, has not used "reasonable standards." Labeling a service "unnecessary," as the State has done, is substituting semantics for the application of "reasonable standards." It is clear that

New Hampshire simply does not want to be a party to elective abortions. It has made a legal decision on moral grounds that one choice of treatment for pregnancy will be financially supported while another will not. Moral judgments are not "reasonable standards" under the law, and "no other basis appears here for denying medical assistance." *Klein v. Nassau County Medical Center, supra,* 347 F.Supp. at 500; *see, Doe v. Westby,* 402 F.Supp. 140 (D.S.D., 1975), incorporating 383 F.Supp. 1143 (D.S.D., 1974).

## THE EQUALITY REQUIREMENT

Plaintiffs contend that defendants are violating Title XIX's equality requirement by denying them, healthy pregnant women, reimbursement for a service, abortion, which defendants make available to others. They also claim that defendants are limiting medical assistance to pregnant women to the "least voluntary form of treatment" and are thus placing on pregnant women a restriction that is not placed on any other group of Medicaid recipients. Defendants have failed to justify the limitations they have placed on assistance to pregnant women, and I find that they have violated Title XIX's mandate of equality.

 A major limitation on the states in the administration of their Medicaid programs is Title XIX's equality requirement. A state is required to provide medical assistance to all of the "categorically needy" as defined in Section 1396a(a)(10)(A). They are further mandated to provide:

that the medical assistance made available to any individual described in clause (A)—

(i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, . . . . 42 U.S.C. § 1396a(a)(10)(B)(i).

By this provision, Congress has statutorily guaranteed Medicaid recipients equal treatment by state Medicaid administrators.

Defendants include pregnancy as a condition for which a Medicaid recipient may receive Medicaid benefits, and all pregnancy care, except for elective abortions, is reimbursable. Of the women who terminate their pregnancies, only those who do so under medical constraints of possible harm to their lives or health are benefited under Medicaid. Defendants offer no reasonable justification for differentiating between women who elect and women who are under medical constraints to terminate their pregnancies. Defendants' contention that New Hampshire is economizing by this measure does not stand scrutiny. *See* above. Defendants only other justification is a moral decision that the state should not be a party to elective abortions. The State thus seeks to proscribe abortions as to one group of pregnant women. Defendants are violating Medicaid's equality mandate, 42 U.S.C. § 1396a(a)(10)(B)(i), by refusing some pregnant women a medical service they offer to those who meet the State's moral standards in this area.

Defendants' regulation also affects all pregnant women in that it effectively conditions their receipt of medical assistance to a finding by a physician of medical necessity for the chosen treatment or medical procedure. This finding must be that, without the treatment or procedure, the patient's life or health would be endangered. Defendants have not placed this condition on any other group, nor have they offered any justification for it. They have, therefore, reduced the scope and extent of medical services available to Medicaid recipients who happen to be pregnant.

Finally, defendants' regulation effectively forces pregnant Medicaid recipients to accept the "least voluntary method of treatment." *Doe v. Beal, supra,* 523 F.2d at 622. As discussed above, a woman in the first trimester of pregnancy usually has a real choice and can elect either to carry her pregnancy to full-term or to terminate it. Defendants have effectively eliminated that choice for Medicaid recipients and have thus "force[d] pregnant women to use the least voluntary method of treatment, while not imposing a similar requirement on other persons who qualify for aid." *Id.* at 619. Defendants offer no explanation at all for imposing this requirement on pregnant women. Title XIX does not permit the state to arbitrarily and without reason limit a recipient's choice of treatment if that limitation results in offering unequal medical assistance to similarly situated Medicaid recipients. I find that defendants have thus violated Title XIX's equality provision. 42 U.S.C. § 1396a(a)(10)(B)(i); *Doe v. Beal, supra,* 523 F.2d at 622.

## THE ARBITRARY DENIAL LIMITATION

Finally, I find that defendants' regulation violates 45 C.F.R. 249.10(a)(5)(i) which provides that each state must:

Specify the amount and/or duration of each item of medical and remedial care and services that will be provided to the categorically needy and to the medically needy, if the plan includes this latter group. Such items must be sufficient in amount, duration and scope to reasonably achieve their purpose. With respect to the required services for the categorically needy (subparagraph (1) of this paragraph) and the medically needy (subparagraph (2) of this paragraph), the State may not arbitrarily deny or reduce the amount, duration, or scope of, such services to an otherwise eligible individual solely because of the diagnosis, type of illness or condition. Appropriate limits may be placed on services based on such criteria as medical necessity or those contained in utilization or medical review procedures.

This regulation allows each state to choose exactly what services it will provide Medicaid recipients and to determine the qualitative, quantitative, and durational limits on those services.

The states are, however, subject to three limitations: first, the services offered must be sufficient in quantity and duration to attain their purpose; second,

the services offered cannot be arbitrarily denied or reduced to an eligible individual solely because of a diagnosis or condition; and, third, any limits placed by the states on the services offered must be appropriate.

New Hampshire has chosen not to offer elective abortions as a medical service, and defendants claim that this is within the discretion given the states by 45 C.F.R. 249.10(a)(5)(i). I disagree. ·

■ New Hampshire is restricted in its Medicaid program by the "arbitrary denial" clause of 45 C.F.R. 249.10(a)(5)(i). I find that New Hampshire's regulation authorizing Medicaid reimbursement for only "therapeutic" abortions arbitrarily denies a medical service to pregnant women who are physically in good health.

Defendants claim that this denial is not arbitrary because, if a woman is physically healthy and safely pregnant, treatment is not "medically necessary to preserve the life or health of the mother or fetus." By their definition, defendants preclude any consideration of the broad range of criteria the United States Supreme Court outlined as legitimate factors to be considered by both the physician and the woman in making the abortion decision:

> Whether, in the words of the Georgia statute, "an abortion is necessary" is a professional judgment that the Georgia physician will be called upon to make routinely.

> We agree with the District Court, 319 F.Supp., at 1058, that the medical judgment may be exercised in the light of all factors—physical, emotional, psychological, familial, and the woman's age—relevant to the well-being of the patient. All these factors may relate to health. This allows the attending physician the room he needs to make his best medical judgment. And it is room that operates for the benefit, not the disadvantage, of the pregnant woman. *Doe v. Bolton, supra,* 410 U.S. at 192, 93 S.Ct. at 747.

The Supreme Court in *Wade* and *Bolton* recognized that an elective abortion can be a "necessary" medical treatment and one in the best interests of the woman. *See, Roe v. Wade, supra,* 410 U.S. at 153, 93 S.Ct. 705.

■ Defendants' limited definition of "medically necessary" abortions creates an irrebuttable presumption that an abortion performed on a woman whose pregnant condition does not pose a diagnosable physical health hazard is not "necessary." It is a test that is not "rationally related to a legitimate legislative objective." *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975). Plaintiffs were initially denied Medicaid reimbursement for their abortions solely because they failed to meet defendants' test of "necessity." Their abortions · were, therefore, presumed to be unnecessary. Defendants have failed to show that this test is at all rationally related to a legitimate goal of the state; it is, instead, based on moral considerations. The test is, therefore, arbitrary and creates an irrebuttable presumption as to the "necessity" of an abortion.

The creation of an irrebuttable presumption which does not further legitimate goals and which affects a deprivation of substantial interests is itself arbitrary. *Cf. Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). This irrebuttable presumption arbitrarily denies some Medicaid recipients a medical service solely because of their healthy pregnant condition.

■ 45 C.F.R. 249.10(a)(5)(i) allows the State to place "appropriate limits" on services based on "necessity." As noted above, an elective abortion cannot be conclusively presumed to be "unnecessary." Defendants' *per se* exclusion of Medicaid benefits for an elective abortion based on their definition of necessity is clearly inappropriate in the light of *Doe v. Bolton, supra,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201. Furthermore, "limits" does not imply exclusions. As a

rule of statutory construction, it is well established that, in interpreting statutes, ". . . terms of ordinary speech . . . mean what they mean in ordinary intercourse . . . ." *Western Union v. Lenroot,* 323 U.S. 490, 503, 65 S.Ct. 335, 342, 89 L.Ed. 414 (1945); *Labor Board v. Coca-Cola Bot. Co.,* 350 U.S. 264, 268, 76 S.Ct. 383, 100 L.Ed. 285 (1956). Defendants' bar of elective abortions is a complete prohibition, not a limit. Defendants cannot rely on 45 C.F.R. 249.10(a)(5)(i) because their complete exclusion of elective abortions as a reimbursable method of treatment for pregnancy is neither a "limit" nor an "appropriate" one.

### HEW's INTERPRETATION

In a question of statutory interpretation, great deference is due the state agency charged with the administration of the statute. *United States v. City of Chicago,* 400 U.S. 8, 10, 91 S.Ct. 18, 27 L.Ed.2d 9 (1970); *Lewis v. Martin,* 397 U.S. 552, 559, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). I do not believe that HEW's interpretation of Title XIX is contrary to the position taken in this opinion.

The Medical Assistance Services Administration of the Department of Health, Education and Welfare described its position on abortion as follows:

> . . . the Social Security Act and the HEW regulations provide for Federal matching of state expenditures for all kinds of medical care and services, including patient and hospital services, out-patient hospital services, physician services, drugs, etc. If the State Medicare Program paid for these services whether for abortion or any other medical services, the Federal Government shared the cost with the state. Cited in *Doe v. Wohlgemuth, supra,* 376 F.Supp. at 179, n. 5.

■ Essentially, HEW's position is that, if the states pay, the federal government pays. This position is conso-

nant with the discretion allowed the states in the design of their Medicaid programs. The states have great latitude in deciding what medical procedures within the broad categories of required services to offer Medicaid recipients, and the federal government's refusal to oversee that decision by requiring or prohibiting any specific medical procedures is in accordance with the statutory plan. The statutory limit is state law and state decisions, not federal agency rulings.

■ The Medicaid statute does not require states to provide reimbursement for any specific medical procedure, but the statute does require states to treat Medicaid recipients equally and fairly. Once the state offers medical services for a condition requiring medical care, it may not unreasonably restrict a Medicaid recipient's choice of treatment, and once it offers a medical procedure as available to Medicaid recipients, it cannot unreasonably deny it to similarly situated Medicaid recipients.

■ HEW's position does not contradict this holding. Abortion is treated by HEW like "any other medical procedure," and may or may not be offered at the state's option. HEW did not speak to the specific problem faced by this court. This holding simply requires at a minimum that, if New Hampshire offers medical services for the care of pregnancy, it may not unreasonably and arbitrarily restrict a Medicaid patient's choice of treatment, and, if it offers abortion as a reimbursable medical service to pregnant women, it may not differentiate between individuals who terminate their pregnancies by abortion based on their reasons for doing so. So long as New Hampshire covers the costs of pregnancy care for Medicaid recipients, it may not, under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* unreasonably exclude abortions as an eligible service.

Plaintiffs' motion for summary judgment is granted.

So ordered.