**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 30, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WILLIAM SERNA,

    Defendant - Appellant.

No. 19-2114
(D.C. No. 1:18-CR-03321-JB-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McKAY**, and **MORITZ**, Circuit Judges.[**]
_____

In this case, Serna conditionally pleaded guilty to being a felon in possession

of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). He now appeals

the district court's denial of his motion to suppress. He argues that the police sergeant

lacked reasonable suspicion to seize him. Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.

_____

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.
    [**] The late Honorable Monroe G. McKay was assigned to, and participated in the disposition of, this matter before his death on March 28, 2020.

## BACKGROUND

Sergeant Peter Silva is a fifteen-year veteran of the Albuquerque Police Department (APD). On September 3, 2018, Sergeant Silva and three other police officers were on bicycle patrol in downtown Albuquerque. During this patrol, Sergeant Silva rode on a street alongside Robinson Park—an area known for frequent drug-related activity. From his bicycle, Sergeant Silva saw two men standing by each other, apparently in "a hand-to-hand exchange." R. vol. 2 at 15. As Sergeant Silva neared the men, he saw one man hand the other cash. Sergeant Silva recognized one of the men, Serna, from earlier drug-related offenses. Sergeant Silva got off his bicycle and asked the two men what they were doing. Before either man responded, Sergeant Silva ordered them to keep their hands where he could see them, and both men "immediately put their hands up in the air." *Id.* at 19–20. One of the men, Fuentes, told Sergeant Silva that he was buying a lighter from Serna and showed Sergeant Silva the lighter in his hand. Sergeant Silva questioned whether Fuentes was buying a lighter for "[w]hat[,] ten dollars?"[1] Fuentes responded that he "didn't wanna walk [to the gas station]." Body-Camera Video at 00:30–00:40. Unpersuaded by this

_____

[1] In Sergeant Silva's body-camera recording of the encounter, he speaks of ten dollars, but testifying at the suppression hearing, he testified that he had seen "20 bucks." R. vol. 2 at 23. Serna raises Sergeant Silva's conflicting statements over whether he saw Serna and Fuentes exchange a ten-dollar or a twenty-dollar bill. But the district court "discount[ed] Silva's testimony regarding what bill he observed [the men exchange,]" and found that regardless of what denomination of bill Sergeant Silva saw being exchanged, he "trust[ed] Silva's ability to identify suspicious activity[.]" *United States v. Serna*, 406 F. Supp. 1084, 1126–27 (D.N.M. 2019) (citation omitted).

story, Sergeant Silva told both men to put their hands on their heads and approached Serna, who was nearer to him. As a safety measure, Sergeant Silva asked Serna if he had any weapons on him, and Serna replied that he did have a gun in his front pocket.

Sergeant Silva located and removed a loaded semi-automatic firearm from Serna's pocket. Sergeant Silva read Serna his *Miranda* rights and placed him under arrest. After handcuffing Serna and while awaiting a police car, Sergeant Silva said to Serna: "Will, I know you got prior felonies, man, you're not supposed to have a gun on you." *Id.* at 03:30–03:47. As part of a search incident to arrest, Sergeant Silva seized from Serna's backpack a second loaded firearm, 100 rounds of ammunition, and a distribution amount of methamphetamine. A federal grand jury charged Serna with one count of being a felon in possession, in violation of 18 U.S.C. § 922(g)(1).[2]

On January 6, 2019, Serna filed a motion to suppress evidence of the firearms, ammunition, and methamphetamine, as fruit of an illegal seizure. The district court ruled that Silva had reasonable suspicion for a *Terry* stop and denied the motion to dismiss. *United States v. Serna*, 406 F. Supp. 3d 1084, 1099 (D.N.M. 2019). The district court concluded that Sergeant Silva had seized Serna when Serna placed his hands on top of his head after being told to keep his hands in sight. *Id.* at 1124. And in a thorough opinion, the district court concluded "that Silva had reasonable suspicion that justified seizing Serna[.]" *Id.* at 1123–24.

---

[2] Serna initially faced state-court charges for "being a felon in possession of a firearm, narcotics trafficking, and narcotics possession[,]" Appellee's Resp. Br. 5, but these charges were later dismissed after Serna's federal indictment.

3

Serna pleaded guilty but reserved his right to appeal the district court's order denying his suppression motion. On July 16, 2019, the district court sentenced Serna to seventy-months' imprisonment. Serna has timely appealed.

## STANDARD OF REVIEW

We review the district court's factual findings for clear error and its legal conclusions de novo, and we view the evidence in the light most favorable to the government. *United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011). We review de novo the district court's ultimate determination of reasonableness. *Id.* (citing *United States v. Thompson*, 524 F.3d 1126, 1132 (10th Cir. 2008)).

## DISCUSSION

The sole issue on appeal is whether Sergeant Silva's seizure of Serna was reasonable under the Fourth Amendment. The Fourth Amendment protects persons from "unreasonable searches and seizures." U.S. Const. amend. IV. But the Fourth Amendment also permits police officers to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot[.]" *United States v. Neff*, 681 F.3d 1134, 1137–38 (10th Cir. 2012) (internal quotation marks omitted) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Unlike probable cause, reasonable suspicion requires only that the officer articulate specific facts "and rational inferences drawn from those facts" supporting that a person has committed or is committing a crime. *McHugh*, 639 F.3d at 1255 (citation omitted); *see also United States v. Latorre*, 893 F.3d 744, 750 (10th Cir. 2018). Though not a heavy burden, reasonable suspicion still

4

requires more than a mere "inchoate and unparticularized suspicion or hunch." *Donahue v. Wihongi*, 948 F.3d 1177, 1188 (10th Cir. 2020) (internal quotation marks and citations omitted).

An investigative detention—commonly known as a "*Terry* stop"—occurs when a police officer stops and detains a person "to determine his identity or to maintain the status quo momentarily while obtaining more information." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (citation omitted). *Terry* stops are considered seizures under the Fourth Amendment.[3] *See Michigan v. Summers*, 452 U.S. 692, 696 (1981) ("In assessing the validity of respondent's initial detention, we note first that it constituted a 'seizure' within the meaning of the Fourth Amendment."); *see also United States v. Perdue*, 8 F.3d 1455, 1461 (10th Cir. 1993).

Serna was "seized" under the Fourth Amendment through a *Terry* stop when Sergeant Silva told Serna to keep his hands where he could see them, and Serna placed his hands on top of his head. *See United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010) (reiterating that a seizure occurs when (1) an officer shows his authority and (2) the citizen submits). The district court ruled that Serna's seizure was justified because Sergeant Silva "(i) observed an individual [Serna] known to engage in drug trafficking; (ii) engag[ing] in a hand to hand exchange of cash; (iii) in a park known as a site for drug trafficking." *Serna*, 406 F. Supp. 3d at 1124. We agree

---

[3] An initial detention "seizure" is different than an "official seizure of the person [which] must be supported by probable cause, even if no formal arrest is made." *Michigan v. Summers*, 452 U.S. 692, 696 (1981) (citing *Dunaway v. New York*, 442 U.S. 200 (1979)).

with the district court that the facts, viewed in the light most favorable to the government, establish that Serna's seizure was reasonable under the Fourth Amendment.

In evaluating whether Sergeant Silva had reasonable suspicion to seize Serna, we look at the totality of the circumstances, judging "the officer's conduct in light of common sense and ordinary human experience," *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997), and we defer to an officer's ability to distinguish between innocent and suspicious actions, *United States v. Simpson*, 609 F.3d 1140, 1146–47 (10th Cir. 2010). Reasonable suspicion does not require us to "rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002). But it does require that the facts relied on by Sergeant Silva for the *Terry* stop were "facts [that were] available to the officer at the moment of the seizure." *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968).

Serna argues "that there was no evidence that an exchange of drugs ever occurred." Appellant's Opening Br. 8. By this, Serna implies that an officer's suspicions are reasonable only if proved correct. In fact, reasonable suspicion does not require proof that a crime actually or even probably occurred. *See United States v. Madrid*, 713 F.3d 1251, 1256 (10th Cir. 2013) ("[An officer] may initiate an investigatory detention even if it is more likely than not that the individual is *not* involved in any illegality." (internal quotation marks omitted) (quoting *United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004))). Here, Sergeant Silva saw two men engaging in activity consistent with a drug transaction, one of whom he knew

6

had previous drug-related arrests. *Serna*, 406 F. Supp. 3d at 1128. The district court found that Sergeant Silva had observed one "half of a purported drug transaction." *Id.*

Serna also disputes reasonable suspicion on grounds that "looking 'suspicious' in a 'high crime area' is not a sufficient basis for a seizure." Appellant's Opening Br. 9 (citing *Brown v. Texas*, 443 U.S. 47 (1979)). Without analysis, Serna characterizes what Sergeant Silva had as mere inchoate suspicion.

The district court considered Sergeant Silva's testimony that Serna was in a high-crime area, in which police officers had "regularly arrest[ed] individuals" for drug-related offenses. *Serna*, 406 F. Supp. 3d. at 1125. Indeed, this fact alone would not establish reasonable suspicion. *McHugh*, 639 F.3d at 1257 ("[T]he fact that a stop occurred in a high-crime area cannot alone justify a *Terry* stop[.]"). But "this circuit . . . continues to consider an area's disposition toward criminal activity as a factor that contributes to an officer's reasonable suspicion." *United States v. Guardado*, 699 F.3d 1220, 1223 (10th Cir. 2012) (citations omitted).

It matters too that Sergeant Silva recognized Serna from previous drug-related arrests.[4] "Standing alone, a criminal record—let alone arrests or suspected gang affiliation—is not sufficient to create reasonable suspicion of anything[.]" *United States v. Hammond*, 890 F.3d 901, 906–07 (10th Cir. 2018) (alteration in original) (internal quotation marks and citation omitted). But when "the circumstances of the

---

[4] The district court credited Sergeant Silva's testimony that he recognized Serna from previous arrests, noting that "Silva stated in court and under oath that he recognized Serna once he entered Robinson Park." *Serna*, 406 F. Supp. 3d at 1126-27.

stop itself interact with an individual's criminal history to trigger an officer's suspicions, that criminal history becomes critically relevant for *Terry*-purposes." *Id.* (citation omitted).

Sergeant Silva's experience and training are also relevant considerations. "Officers must be permitted to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Quintana-Garcia*, 343 F.3d 1266, 1270 (10th Cir. 2003) (internal quotation marks and citations omitted). Based on the above facts, Sergeant Silva had reasonable suspicion to investigate as he did. As such, the district court did not err in denying Serna's motion to suppress.

## CONCLUSION

For the reasons given, we affirm.

Entered for the Court

Gregory A. Phillips
Circuit Judge